7 W    455
215    395
e215    396

## Rubeck *against* Gardner.

An alien having purchased land in 1809, and died in 1812, without having been naturalized, and without having made the declaration required by the act of congress preparatory to becoming a citizen, his estate escheated to the commonwealth, who had power in 1814, without office found, to vest the same in the widow of the deceased alien.

ERROR to the common pleas of *Westmoreland* county.

Matthias Rubeck and Ann his wife, Gotlieb Kuhnler, George Kuhnler and others, heirs at law of John Lawyer deceased against Abraham Gardner. Ejectment.

The court below (White, President) thus detailed the facts and law of the case to the jury.

"It appears from the evidence that John Lawyer came to this country an alien in the year 1807 or 1808, that he purchased the piece of land in controversy in 1809, and died early in the month of December 1812. There is no evidence that he was naturalized, or ever made the declaration required by the act of congress preparatory to becoming a citizen; if he arrived in 1808, he would not have been in the country the requisite length of time to entitle himself to throw off his former allegiance and become a citizen of the United States. So that upon the present occasion it is to be considered that he lived and died an alien.

"Under these circumstances an application was made to the legislature, and that body presuming that the estate of Lawyer had escheated, and was liable to escheat in default of heirs, on the 25th of February 1814 passed an act of assembly granting to Anna Maria Lawyer, the wife of the deceased, the interest which the commonwealth had in the land, saving such right as any heirs of John Lawyer might have to the same.

"This being a legislative grant, and the object being to pass all the interest which the commonwealth had at that time in the land, it cannot now be disputed but it passed all the estate, although the legislature might have been in error as to the mode by which that title devolved upon the commonwealth.

"On the 11th of April 1814, Anna M. Lawyer conveyed to Christian Trauger for a valuable consideration, who, on the 25th December 1826, conveyed in like manner to Adam Gardner, the defendant.

"By the common law an alien might purchase lands, but he could not hold them if the government thought proper to have an inquest of office taken; but if he was permitted to hold them during his life, he could not transmit the land so purchased to his heirs after his

decease. Upon his death, the land in England vested in the king, and in this state it would have devolved upon the commonwealth.

" Such being the common law in force at the time of our declaration of independence, the question is whether there was any act of assembly in force in 1809 which gave authority to John Lawyer to purchase such an estate as would be transmissible to his heirs.

" Since we became an independent state we have had various acts upon this subject, some confirming purchases made by aliens and titles derived from them, and others giving general authority to aliens to purchase and transmit unlimited quantities of land, and at other times limited as to quantity and with certain qualifications annexed.

" The first act of assembly we find upon the subject was passed in 1778, and that was an act confirming estates derived through alien ancestors, testators or grantors, and conferred no authority upon aliens to purchase lands in future. Next came the act of 1789, passed on the 11th of February, which authorized aliens, not being the subjects of a power at war with the United States, to purchase and hold lands as fully and to all intents and purposes as our own citizens might do. This act was limited in its operation to the 1st of January 1792, and by another act of assembly of the 8th of March 1792 was renewed and continued in force for three years, and from thence to the session of assembly next ensuing, and this latter act was extended for the term of two years by an act passed the 12th of February 1795, when it was suffered to expire, and has not again been revived in the same unqualified state in which it then existed.

" At the period at which these various acts of assembly were passed, the commonwealth had a large unsettled tract of country to dispose of. It was her policy, as well as her interest, to hold out every inducement to have these lands settled and her treasury replenished ; and acting upon these principles, we find that she afforded every facility to the alien to enable him to become a freeholder of the commonwealth, and to invest his capital within her borders; and availing themselves of these liberal provisions, foreigners were induced to purchase. A number of individuals, designated as the Holland Company, yet continue to hold lands purchased upon the faith of these acts of assembly.

" But when the vacant lands were disposed of, the policy of the state was changed, and, exercising a right which has been recognized by all governments, she thought fit to impose terms upon all foreigners who were desirous of purchasing lands, and, as a general qualification, to require that they should be residents of this commonwealth at the time of the purchase made. Thus, by the act of 11th April 1799, it was provided that it should be lawful for any alien not being a subject of a sovereignty at war with the United States, and having declared his intention to become a citizen agreeably to the act of congress of 18th June 1798, to purchase and hold lands as fully as any citizen could or might do.

[Rubeck v. Gardner.]

" The act of congress, referred to in this act of assembly, was supplied and repealed by another act passed on the 14th of April 1802 ; and as aliens could no longer make the declaration required by the act of 1799, this act was supplied by another passed on the 10th of February 1807, by which it is provided that any alien, not being the subject of some sovereign power at war with the United States, and having declared his intentions in due form of law to become a citizen of the United States, was permitted to purchase to the extent of five hundred acres ; and by the act of the 20th of March 1811, all purchases made by emigrants previous to their having made a declaration of their intention to become citizens of the United States, and who had, since their purchase, been naturalized, were declared valid, and the estate vested as though they had been citizens at the time of the purchase so made.

" These were the acts of assembly on this subject which were in force from the time John Lawyer arrived in this country to his death in 1812, and it does not appear that he was in the provisions of either of those acts. He never had been naturalized, nor had he made any legal declaration of his intention to become a citizen. Dying in this situation, upon his decease his estate was cast upon the commonwealth ; and, acting through her constituted authorities, she saw fit to grant that estate to his widow Anna Maria Lawyer, under whom the defendant claims.

" The act of assembly of 23d February 1791, which has been referred to, conferred no authority upon aliens to purchase lands. It was passed at a period, as we have seen, when foreigners were invited to become purchasers of real estate, and it was to enable those who had so purchased to transmit the same to their kindred or to devise it to the object of their affections, and it removed any impediment which might have hindered their alien heirs or devisees from recovering the estate which might have been left by such alien purchaser, or owned by a citizen of the United States whose kindred may not have followed him to this country. But this act of assembly does not relieve the present plaintiffs. It is not their own alienage which is a bar to their recovery, but the alienage of their ancestor, whose estate on that account was not transmissible to his heirs. Neither are they benefited by the saving clause in the act of the 25th of February 1814. If they had no right at that time, there was nothing for that clause to operate upon. A general remedy is applied to all subsequent cases by the act of 1818, but the estate had passed into the hands of *bona fide* purchasers nearly five years before the passage of this act, and of course cannot be divested.

" If this difficulty was removed, and the jury were satisfied that Gottlieb Kuhnler is the heir at common law of John Lawyer, and this appear to be a *casus omissus* in the intestate law, he would be entitled to recover and the other plaintiff become non-suit, and he would not be barred by the statute of limitations, if the jury believed that Sabina Weissen, formerly Lawyer, died in 1820."

VII.—2 o*

[Rubeck v. Gardner.]

To which opinion of the court the counsel for the plaintiffs excepted.

*Findlay* and *Coulter*, for plaintiffs in error, cited, act of 1791, *Purd. Dig. of* 1830, *p.* 38; 3 *Wheat.* 14; 7 *Cranch* 603; *Pow. on Dev.* 317; 3 *Bl. Comm.* 258, 359.

*Alexander*, for defendant in error, cited, 2 *Kent's Comm.* 54; *Fitz.* 195; act of 31st August 1778, 1 *Smith's Laws* 461; act of 29th September 1787, 2 *Smith* 425; act of 23d February 1791, 3 *Smith* 4; act of 10th February 1807, 4 *Smith* 364; act of 20th March 1811, 5 *Smith* 211; act of 22d March 1814, 5 *Smith* 180; act of 21st January 1819, 7 *Smith* 142; act of 31st March 1837, *Pamph. Laws* 121.

The opinion of the Court was delivered by

SERGEANT, J.—The charge of the judge below presents in a succinct and clear manner the history of Pennsylvania legislation on the subject of the right of aliens to hold and transmit real estate. The plaintiff in error relies on certain points arising upon this charge, as entitling him to a reversal of the judgment.

1. It is suggested that without office found the estate would descend to the heir. But the law is, that if an alien purchase land, or if land be devised to him, he may take and hold until an inquest of office; but upon his death the land would instantly and of necessity (as the freehold cannot be kept in abeyance), without any inquest of office, escheat and vest in the state, because he is incompetent to transmit by hereditary descent. See the cases cited 2 *Kent's Comm.* 54. If therefore John Lawyer was incapable (on account of alienage) of holding real estate in Pennsylvania and of transmitting it to alien heirs, his estate escheated to the commonwealth on his death without inquest of office; it became vested in the commonwealth, and they had power to transfer it by act of the legislature to the widow, who took it subject to the rights of others by the express saving in the act. When the legislature therefore, by the act of the 25th of February 1814, granted to Ann Maria Lawyer, the wife of the deceased, the interest which they had by escheat, they passed the estate accruing to them by the alienage of the heirs.

2. The main question raised by the plaintiff in error is, on the due construction of the act of 23d of February 1791: did that act, as the plaintiff in error contends, authorize a citizen or subject of a foreign state to take lands in Pennsylvania by devise or descent from an alien who had purchased them without having complied with the conditions imposed by law? It seems to me that this construction would be contrary to the letter of the act and its whole object and design. The act was passed, as the preamble recites, for the encouragement of persons purchasing lands in this state; and therefore must naturally refer to persons purchasing lawfully, and not to persons acquiring

[Rubeck v. Gardner.]

lands here contrary to law. It enables every person, being the citizen or subject of any foreign state, to acquire and take, by devise or descent, lands and other real property in this commonwealth. A title by devise or descent is a derivative title ; it can rise no higher than its source. The devisee or heir can only take what the ancestor had. But if the ancestor was an alien, and as such incompetent to take, and on his death his property escheated, there was nothing to descend or pass by will. If this act were to receive the construction contended for by the plaintiff, the heir or devisee of an alien would enjoy a greater and more entire estate than the alien himself had : whereas, it would seem to be the object of the act to enable a party to transmit an estate legally purchased. To enable the alien heir to hold what his ancestor was prohibited by law from holding, would be giving a boon to an illegal act. Great relaxations in the common law have taken place in Pennsylvania from the period of the revolution to encourage foreigners to come to Pennsylvania and purchase lands, but then it has required those foreigners before purchasing to conform to certain requisites: if they did so, they were enabled by the act of 1791 to transmit their property, but not otherwise. Those who bought without conforming to these requisites were left unprovided for. Many cases were saved by the act of the 24th March 1818. But even this act on careful inspection would seem not to furnish a remedy for the precise case before us. The first section is prospective, enabling aliens to purchase and hold lands not exceeding five thousand acres. The second section confirms past purchases by emigrants residing here, made previous to declaring their intentions to become citizens of the United States and who had been naturalized after the purchase. The third section embraces the case of aliens who had purchased and sold, and of those who had died without being naturalized. The present is the case of a purchase by an alien resident, who purchased and died without having sold, without having been naturalized and without having declared his intentions of becoming a citizen. It is not however necessary to decide this point, because if the case is embraced by the last section, it falls within the proviso saving vested rights. The state had conveyed its right by escheat to the widow in 1814, and she had sold in the same year to Trauger, under whom the defendant claims. It may be added that the latter clause of this section is a very clear recognition by the legislature of the operation of the then existing law ; for if the doctrine contended for by the plaintiff is correct, then by the act of 1791 the estate would have passed to the alien heirs on the death of the alien ancestor; there was no need of confirming the title of alien heirs of an ancestor who had died without being naturalized.

Judgment affirmed.