John E. Sutherland *et al.*

*v.*

Adeline B. Sutherland *et al.*

1. MARRIAGE SETTLEMENT—*jointure in bar of wife's dower does not affect her rights as heir of her husband.* Where a party, in anticipation of marriage, conveyed to his intended wife certain real estate, which was declared to be a jointure in full recompense and satisfaction for dower, or any

69 481
137 507
69 481
151 223
69 481
163 231
69 481
181 169
69 481
192 4261
69 481
206 4 30

claim of dower on her part, the latter joining in the execution of the same to evince her assent to the provisions thereof, and after the marriage the husband died intestate, leaving no child or children, or descendants of any child: *Held,* that this ante-nuptial contract did not bar the widow from claiming as heir of her husband, and that, under the statute, she took as such heir one-half of the real and all the personal estate of her deceased husband, left after the payment of his debts.

2. DOWER—*estate of, differs from that by inheritance.* The right to dower is perfect when there has been an ownership in real estate by the husband, during coverture, and the wife survives the husband, although the ownership may have been but momentary, and the husband can not defeat the same by any act of his, nor can the widow be deprived of it by creditors of her husband. The heir, on the other hand, has no interest in the property until the intestate's death, and the inheritance may be conveyed away by the intestate in his lifetime, or it may be exhausted by creditors after his death, so as to deprive the heir of everything to which he might otherwise be entitled.

3. MISTAKE—*proof required to justify a correction of a written contract.* As the parties are presumed to have understood the legal effect of their written contract, in order to justify a reformation on the ground of mistake, the proof must be such as to leave no fair and reasonable doubt upon the mind that the instrument does not embody the final intention of the parties.

4. SAME—*the mistake must be mutual.* A rectification can only be had when both parties have executed an instrument under a common mistake, and have done what neither of them intended. A mistake on one side only may be ground for rescinding, but not for correcting, an agreement.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This was a bill in equity, filed by John E. Sutherland and others, as the heirs at law of John E. Sutherland, deceased, against Adeline B. Sutherland and others, for the partition and settlement of the estate of the deceased. The opinion of the court presents the points in controversy, and the leading facts relating thereto.

Messrs. FORRESTER & BEEM, for the appellants.

Mr. J. V. LEMOYNE, for the appellees.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This is a contest between the brother and certain nephews and nieces of the intestate, on the one side, and his widow on the other, in regard to the interest claimed by the latter in the intestate's estate.

There is no dispute upon the facts, and they are briefly these: John E. Sutherland died intestate, seized and possessed of a considerable amount of real and personal property, leaving, surviving him, Adeline B. Sutherland, his widow, but no child or children, or descendant of child or children. Some years before his death, and immediately prior to and in view of his anticipated marriage with the said Adeline, they entered into the following written contract:

"This indenture, made and entered into this fourth day of April, A. D. 1862, between John E. Sutherland, bachelor, of the city of Chicago, in the county of Cook and State of Illinois, party of the first part, and Adeline B. Loomis, spinster, of the same place, party of the second,

"Witnesseth: That in contemplation of marriage between the parties to this instrument, and for the purpose of barring any dower or claim, or right of dower which might accrue by such intended coverture to the said party of the second part, of, in and to, or out of all and every, or any, the lands and estates, in law or equity, whereof the said party of the first part now is or shall be seized at any time during the coverture between them, the said party of the first part, for and in consideration of the premises and of one dollar to him in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, released and confirmed, and by these presents does hereby grant, bargain, sell, alien, release and confirm unto the said party of the second part, and to her assigns, all that certain tract or parcel of land lying and being in said city of Chicago, and known and described as—

"The east twenty-five (25) feet fronting on Monroe street, running through to Smith street, off the south-east corner of the acre purchased by the said party of the first part of Samuel T. Smith, together with all and singular the tenements, hereditaments and appurtenances whatsoever thereunto belonging or in anywise appertaining.

"To have and to hold the aforesaid premises, with the appurtenances, unto the said party of the second part and her assigns, for and during the term of her natural life.

"And the said party of the second part hereby joins in this deed for the purpose of evincing her assent to the purposes and objects aforesaid, and hereby assents to take the estate in land so as aforesaid granted to her, as and for and in the nature of a jointure, and in full for recompense and satisfaction of and for all dower or claim, or right of dower which might accrue to her, or to which she might become entitled, or which she can or may have or claim of, in, to or out of all and every or any the lands or estates, both in law and equity, whereof the said party of the first part now is or shall be seized or possessed at any time hereafter during the coverture or marriage between the said parties to this instrument."

The contract was signed and sealed by the parties, and acknowledged before a notary public.

The court below decreed that this contract did not bar the widow from recovering, as heir, one-half of the real and all of the personal estate, and refused to so reform it, under the evidence introduced, as to make it accomplish that end. To reverse this decree this appeal is brought, and various errors are assigned upon the record, which we will notice in the order of the objections urged by the counsel in their printed argument.

It is contended that, by the terms of this contract, the widow is barred not only of her dower, but also of her inheritance as an heir at law of the intestate.

We are unable to perceive any ambiguity in the terms used. The phraseology, "in full for recompense and satisfaction of

and for all dower or claim, or right of dower," does not differ in meaning from the last clause of section 7, of the chapter relating to Dower, (1 Gross, 216,) which is in these words: "When an estate in land shall be conveyed to a person and his intended wife, or to such intended wife alone, or to any person in trust for such person and his intended wife, or in trust for such intended wife alone, for the purpose of creating a jointure for such intended wife, and with her assent to be taken in lieu of dower, such jointure shall be a bar to any right or claim for dower of such wife in any land of her husband." The transposition of the words "claim" and "right" in the contract, does not change their signification. They both clearly relate to and are restricted by the word "dower."

We are not aware that there has been, for many years, any doubt as to the legal meaning of the word "dower," when applied to a widow's interest in her husband's estate, although its application to particular cases has involved much and serious controversy. Lord COKE says: "*Dos*, dower, in the common law is taken for that portion of lands or tenements which the wife hath for terme of her life of the lands or tenements of her husband after his decease, for the sustenance of herself and the nurture and education of her children." 1 Coke upon Littleton, 30 b, 31 a. This is substantially followed by Blackstone and Kent: 2 Blackstone, (Sharswood's ed.) 129; 4 Kent, (8 ed.) 33.

By our statute it is declared: "A widow shall be endowed of the third part of the lands whereof her husband was seized of an estate of inheritance at any time during the marriage, unless the same shall have been relinquished in legal form. Equitable estates shall be subject to the widow's dower, and all real estate, of every description, contracted for by the husband in his lifetime, the title to which may be completed after his decease." 1 Gross, 216, sec. 1. The various sections relating to jointure, election, renunciation, barring dower, mode of assignment, etc., all plainly and unmistakably allude to the interest of the widow, as defined by this section. We

have, after diligent examination, been unable to find any section of our statute, or any common law decision, or statement in a text book, wherein the word "dower" is declared or construed to include an estate in fee simple, or one derived by inheritance ; and we venture that no such statute, decision or statement can be found.

The widow claims, here, one-half of the real and all of the personal estate, not in her right as dowress, but as heir at law. The right of dower exists independently of the rights of the heir, and it is in no way affected by them. The right to dower is perfect where there has been an ownership in real estate by the husband during coverture, and the wife survives the husband, although the ownership by the husband may have been but momentary. The inchoate right to dower attaches the moment the husband's right to the realty attaches, during coverture, and he can not convey or incumber the property so as to divest or prejudice that right, without the wife's consent, given in the manner provided by statute ; nor can his creditors, by any proceeding to be instituted by them, destroy or impair the right. The heir, on the other hand, has no interest whatever in the property until the intestate's death, nor can it even be known, certainly, until that event shall have happened, who will be the heir. The inheritance may be conveyed away by the intestate in his lifetime, or it may be exhausted by creditors after his death, so as to deprive the heir of everything to which he might otherwise be entitled. The dissimilarity in the origin, character and duration of the two estates must be plain to every apprehension ; and we can not presume that words strictly descriptive of the one would be used to describe the other.

It is provided by the 49th section of the chapter entitled "Wills," (1 Gross, 805) : "When there shall be a widow, and no child or children, or descendants of a child or children of the intestate, then the one-half of the real estate and the whole of the personal estate shall go to such widow, as her exclusive estate forever, subject to her absolute disposition

and control, to be governed in all respects by the same rules and regulations as are or may be provided in cases of *femes sole.*" And to remove any doubts that might arise from this language alone, whether the estate thus cast upon the wife was not merely in lieu of or in the nature of dower, the section concludes : "saving to the widow, in all cases, her dower, as provided by law." It has been uniformly held by this court, under this section, that the widow takes one-half of the real and the whole of the personal estate as *heir*, and that she is entitled to *dower* in the other half of the real estate. *Tyson et ux.* v. *Postlethwaite et al.* 13 Ill. 727 ; *Tyler* v. *Tyler*, 19 id. 151 ; *Cross* v. *Carey et ux.* 25 id. 564 ; *York* v. *York*, 38 id. 522 ; *Brown et al.* v. *Pitney*, 39 id. 468.

The case of *Walker* v. *Walker*, 1 Vesey, Sr. 54, referred to by the counsel for the appellants, we do not consider in point. There, the intestate had purchased certain copyhold estates, of which the widow took possession as her *free bench*, and the question was, whether she was barred of her *free bench* by the terms of her ante-nuptial contract, which provided that the estate thereby settled upon her should be "in bar and recompense of all dower or thirds which she may be entitled to or any way claim, out of any lands, tenements, messuages or hereditaments, etc."

It is said in Coke upon Littleton, 110 b, sec. 166 : "Also, in some boroughes, by custome, the wife shall have for her dower all the tenements which were her husband's. And this is called frank banke—*francus bancus*," etc. Blackstone says, vol. 2, p. 132 : "Copyhold estates are also not liable to dower, being only estates at the lord's will, unless by the special custom of the manor, in which case it is usually called the widow's *free bench*." It thus appears that *free bench* was, in fact, in the nature of dower. And the Lord Chancellor, in the case referred to, said : "This is said not to be dower, and it certainly is not thirds, being a claim of the whole, but it is sometimes analogous to dower; therefore, though not strictly within the words, it will be proper to give a liberal

construction." In the present case, however, as we have attempted to show, the widow's dower is saved to her by express exception in the statute, and, in addition thereto, the property in dispute is cast upon her as heir. The inheritance is not given to her instead of dower, nor is it analogous to dower.

We perceive no error in the construction given to the contract by the court below.

It is also contended that the court below erred in not reforming the contract, because the evidence shows that the intention of the parties in executing the contract was to bar the wife of any other share, at least in the real estate of her husband, than that secured to her by the contract. The parties are presumed to have understood the legal effect of their contract. *Mears et al.* v. *Graham,* 8 Blackford, 144; *Russell et al.* v. *Branham,* id. 277; *Platt* v. *Scott,* 6 id. 389. And where a party seeks to rectify a written instrument on the ground of mistake, the rule is, the evidence must be such as to leave no fair and reasonable doubt upon the mind that the instrument does not embody the final intention of the parties. Kerr on Fraud and Mistake, 421. "Rectification can only be had where both parties have executed an instrument under a common mistake, and have done what neither of them intended. A mistake on one side may be ground for rescinding, but not for correcting or rectifying, an agreement." Id. 422; 1 Story's Equity Jurisprudence, sec. 152, *et seq.;* Fry on Specific Performance of Contracts, sec. 505.

In our opinion, the evidence wholly fails to bring the case within the rule. The only witness whose evidence goes to this point is James T. Ely. His recollection is by no means positive and distinct as to his instructions from the intestate. He is unable to give the language used, and speaks only of impressions on his mind. There is not a particle of evidence showing that the contract is different from what it was desired and intended by the widow.

There is nothing in the circumstances proved which satisfies us that the contract, as made, was unreasonable. It was,

no doubt, a very great present convenience to the intestate, who was engaged in trade, to have his real estate disencumbered of the inchoate claim of dower, so that he might convey or mortgage it at his pleasure, without consulting any other will than his own; and it was a highly prudential act to provide a home for his wife, which could not be affected by misfortunes which might befall his own financial affairs. At all events, it was competent to make the contract as it was made, whatever may have been the inducing motives; and we do not feel called upon, under the evidence, to say that it does not truly express the intention of the parties.

Believing that there is no error in the record, the decree will be affirmed.

*Decree affirmed.*

Mr. Justice McAllister took no part in the decision of this case.