(No. 23685.—

KATE SCHOELLKOPF, Appellee, *vs.* IDA DEVRY *et al.* Appellants.

*Opinion filed February 12, 1937—Rehearing denied April 20, 1937.*

Stone and Farthing, JJ., dissenting.

Mayer, Meyer, Austrian & Platt, and Maurice J. Moriarty, (Isaac H. Mayer, David F. Rosenthal, and Frank D. Mayer, of counsel,) for appellants.

Elder, Pedderson & Wedel, (Edgar B. Elder, John E. Pedderson, and Herbert A. G. Wedel, of counsel,) for appellee.

Mr. Justice Wilson delivered the opinion of the court:

A decree of the superior court of Cook county ordered partition of four parcels of land among the heirs-at-law of Henry Schoellkopf, Jr., deceased, conformably to the provisions of the third clause of section 1 of the Statute of Descent, and assigned dower to the widow. The collateral heirs prosecute this appeal. They challenge only that part of the decree which allots dower to the widow.

The pertinent facts are: On April 16, 1930, Henry Schoellkopf, Jr., a citizen of the United States, died intestate leaving his widow, Kate Schoellkopf, and his sisters, Emma C. Gallagher, Minnie S. DeVry and Ida DeVry, as his heirs-at-law. The deceased and Kate Schoellkopf were married in Germany, in 1929. Although she lived with him in this State after the marriage Mrs. Schoellkopf did not become an American citizen until June 30, 1931, more than a year after her husband's death. Subsequently, the plaintiff, Kate Schoellkopf, filed her complaint seeking par-

tition of the real estate previously mentioned, and assignment of dower. The defendants, two sisters of the plaintiff's husband and the successors in interest of the third sister, resisted the assertion of dower rights.

The sole issue presented for decision is whether an alien widow of a deceased citizen of the United States and of this State is entitled to dower in real estate, located in Illinois, of which he died seized. The determination of this question requires a consideration of the applicable statutory provisions.

Section 1 of "An act concerning the rights in real and personal property accruing by reason of the marital relation," approved March 4, 1874, as amended by an act approved June 24, 1927, (Laws of 1927, p. 406; 41 S. H. A. 1; State Bar Stat. 1935, p. 1275;) abolishes the estate of curtesy and provides that the surviving husband or wife shall be endowed of one-third of all lands of which the deceased spouse was seized of an estate of inheritance at any time during the marriage, unless the same shall have been released in legal form. Equitable estates are also made subject to dower, and by the amendment of 1927 to this section, except where the deceased spouse died intestate, the surviving spouse is given one-third of the personalty if there are children and one-half of the personalty if there are no children. The personal property is made subject to the just debts and claims made against the deceased's estate. By section 2 the surviving husband or wife of an alien is given the right to dower the same as if such alien had been a native-born citizen of the United States. The first enactment of the present sections 1 and 2 of the Dower act was in 1845. Section 2 of the act of 1845 was identical with the present section 2, and section 1 was the same except that it then was applicable to widows alone and did not contain the provisions with reference to personal property.

At common law aliens had no inheritable blood and were incapable of taking by inheritance. (*Wunderle* v. *Wun-*

*derle,* 144 Ill. 40; *Techt* v. *Hughes,* 229 N. Y. 222.) An alien may not take real property by descent in the absence of a constitutional, statutory, or treaty provision authorizing such taking. (3 Corpus Juris, S. p. 563.) The alien laws of this State, with one exception, have been liberal in the extreme with respect to the rights of aliens to acquire and inherit real estate. In 1819 an act of the General Assembly made it lawful "for any foreigner or foreigners, alien or aliens, not being the legal subject or subjects of any foreign State or power, which is or shall be at the time or times of such purchase, at war with the United States of America, to purchase lands, tenements and hereditaments within this State, and to have and hold the same to them, their heirs and assigns forever," the same as a native-born citizen might do. (Laws of 1819, p. 6.) Eight years later, aliens were given the right to hold lands in the same manner as citizens, and express provision was made that alien widows should have the right to dower. (Laws of 1827, p. 49.) This provision was repealed in 1845 and has never been re-enacted. This cannot avail the defendants as the re-enactment could benefit only the widows of aliens owning land in this State. The same provision was made for them in the second section of the Dower act of 1845 and has been incorporated in the later statute passed in 1874. The Alien act of 1845 (Rev. Stat. 1845, p. 47,) conferred the right to take lands, and to alienate, sell, assign and transmit the same, upon "all aliens residing in this State." The act declared "such lands and tenements shall pass and descend in the same manner as if such alien were a citizen of the United States, and it shall be no objection to any persons having an interest in such estate that they are not citizens of the United States; but all such persons shall have the same rights and remedies, and in all things be placed on the same footing as natural-born citizens and actual residents of the United States." By the act of 1851 (Laws of 1851, p. 149,) the words "residing in this State,"

after the words "all aliens," were omitted from the fore-going provision, so as to confer upon all aliens the right to take lands by deed, will or otherwise, and to alienate, sell, assign and transmit the same, whether they resided in Illinois or elsewhere. While this law was in force it oper-ated as a complete removal of all the disabilities of alienage affecting the right of aliens to take, hold and transmit real property in this State. (*Beavan* v. *Went,* 155 Ill. 592.) The Alien act of 1887 deprived non-resident aliens of this right, with certain exceptions. (Laws of 1887, p. 5.) That statute made non-resident aliens incapable of acquir-ing title to or taking or holding land in Illinois, except that the heirs of aliens who had theretofore acquired lands in the State under the laws thereof, and the heirs of aliens who might acquire lands under the act of 1887, were per-mitted to take such lands by devise or descent and hold title for three years, if such alien was then twenty-one years old, and if of less age, then for five years. The act of 1887 marked a departure, to a limited extent, from a consistent legislative policy of liberality to aliens. It was repealed in 1897 and succeeded by the act in force at the time of death of plaintiff's husband and at the present time. Section 1 (Laws of 1897, p. 5; 6 S. H. A. 1; State Bar Stat. 1935, p. 94;) provides: "All aliens may, subject to the further provisions of this act, acquire and hold title in fee simple, or otherwise, to lands, tenements and hereditaments, situate in this State, by deed, devise or descent, and may alienate, sell, assign, encumber, devise and convey lands, tenements and hereditaments, whether the same have been heretofore or be hereafter acquired, and the title to any lands of which an alien may die seized or possessed intestate, shall descend to the heirs-at-law, and no person shall be deprived of his right to take title to real estate as heir-at-law by descent from any deceased person because he may be an alien or be compelled to trace his relationship to such deceased person through one or more aliens." By section 2 of the statute

the right of an alien to hold title to real estate is limited to six years, and, if such alien is a minor, it is six years after he becomes of age.

The defendants argue that only those widows who are American citizens when the inchoate right to dower becomes consummate may avail themselves of the provisions of the Dower act. Their argument is, that since alien widows were not entitled to dower at common law (2 Blackstone's Com. 131; *Sisk* v. *Smith,* 1 Gilm. 503; *Priest* v. *Cummings,* 20 Wend. (N. Y.) 338; *Proctor* v. *Titcomb,* 22 Me. 300;) they are not entitled to dower in Illinois unless it is expressly or impliedly granted by our statutes. Plaintiff insists, on the other hand, that section 1 of the Dower act is applicable to all husbands and wives and, further, that since section 1 of the Alien act permits aliens to acquire real property by descent, the alien widow of a citizen is entitled to dower irrespective of the provisions of section 1 of the Dower act.

A primary purpose of statutory construction is to ascertain the legislative intention. In seeking the intent of the legislature courts consider not only the language used but also the evil to be remedied and the object to be attained. *People* v. *Continental Illinois Nat. Bank,* 360 Ill. 454; *People* v. *Hughes,* 357 id. 524.

The common law right of dower entitled a wife to a life estate in one-third of all the real estate of which her husband was seized of an estate of inheritance at any time during the coverture. (1 Coke upon Littleton, 30*b*, 31*a*; 2 Blackstone's Com. 129; 4 Kent's Com. (12th ed.) 33.) The object in allowing dower was to furnish means and sustenance for the wife and the nurture and education of her children after the death of the husband and father. (1 Coke upon Littleton, 30*b*, 31*a*; *Sutherland* v. *Sutherland,* 69 Ill. 481; *Sisk* v. *Smith, supra.*) The wife's life estate, denominated dower, arose solely by operation of law. (Kales on Estates and Future Interests, (2d ed.)

sec. 20.) The common law right of dower has been, however, materially modified in this and most other jurisdictions. Our dower act recognizes, and, in some respects, extends the common law right. (*Canavan* v. *McNulty,* 328 Ill. 388; *Steinhagen* v. *Trull,* 320 id. 382.) The wife's right to dower accrues solely because of the marriage relation and is in addition to the share of her husband's estate to which she is entitled under the Statute of Descent. The legislature may diminish, alter, or abolish dower while it remains inchoate. (*Steinhagen* v. *Trull, supra.*) It follows that the widow's right to dower in lands of which the husband died seized is governed by the law in force at the time of his death. *McNeer* v. *McNeer,* 142 Ill. 388; *Henson* v. *Moore,* 104 id. 403.

The language of section 1 of the Dower act is free from ambiguity and purports to apply to all husbands and wives of American citizens. Supplementing section 1, the second section gives the right to dower to the surviving husband or wife of an alien, irrespective of whether the survivor is a citizen. Section 1 contemplated that, in the case of an alien woman, her original citizenship or nationality is acquired or lost as an incident of marriage. (Morse on Citizenship, secs. 102, 137; 1 Wharton on Conflict of Laws, (3d ed.) sec. 11.) An act of Congress passed in 1855 expressly provided that an alien woman became naturalized upon marriage to an American citizen. Under that act and until September 22, 1922, (U. S. C. A. title 8, sec. 368,) every woman who might lawfully be naturalized became an American citizen by virtue of her marriage to a citizen of the United States. His citizenship conferred citizenship on her. It may be conceded, as the defendants maintain, that statutory provisions corresponding to section 2, allowing dower to the widows of alien husbands have no direct application where the husband was a citizen and his widow an alien. (*Currin* v. *Finn,* 3 Denio, (N. Y.) 229.) Sec-

tion 2 must be considered with section 1, however, in ascertaining the legislative intent. By the special provision of section 2 giving the right of dower to the surviving husband or wife of an alien the same as though such alien had been a native-born citizen of the United States, the legislature showed unmistakably that it had made like provision for foreign-born widows of American citizens of the United States. Certainly, the legislature did not intend to give the right to dower to all widows of alien husbands, whether American-born or foreign-born, and to deny the same right to foreign-born widows of American citizens. The manifest purpose of the Dower act was to extend the right to all surviving husbands and widows of deceased spouses.

Though the original enactment did not contemplate the situation presented in this case, one which could not have occurred at the time the act was passed, the purpose of the law is clear and must be given effect by the courts. In 1929, when the plaintiff and Henry Schoellkopf, Jr., were married the former did not become a citizen of the United States by reason of her marriage, but as she was eligible to citizenship, she could be naturalized upon compliance with the naturalization law specially provided for such cases. (U. S. C. A. title 8, sec. 368.) It may be observed that the requirements for naturalization of alien women who marry American citizens are much less stringent than for other aliens eligible to citizenship. Plaintiff has met these requirements and since June 30, 1931, has been a citizen of this country. The contention that merely because the Federal statute provides that an alien woman shall not become an American citizen upon marriage to a citizen of this country she is excluded from the provisions of section 1 of the Dower act, which extend to all widows and husbands of American citizens, is untenable. The Federal act of 1922 does not purport to supersede the laws of the several States relating to the rights of aliens to acquire and inherit real estate. Furthermore, we note that since

the status of an alien woman marrying an American citizen was changed the General Assembly has amended section 1 of the Dower act. It must be presumed that the legislature had the Federal statute in mind in 1927, when it elected to extend, rather than abridge, the right to dower.

Public policy as expressed in the alien laws of this State confirms our conclusion. The plain purpose of the successive statutes has been to remove, generally, the disabilities of aliens as to the acquisition, holding and disposal of real property in Illinois. Aliens are expressly granted the privilege, among others, of acquiring real estate in this State, "by deed, devise or descent." Such statutes may abrogate the disability of an alien widow as to dower rights, even though there is no express provision conferring such rights. It does not appear that this court has had occasion to consider this precise point, but the courts of last resort of other States have reached this conclusion and have held that title in dower is taken by descent and not by purchase. (*Cooke* v. *Doron,* 215 Pa. 393; *Breuer* v. *Beery,* 194 Iowa, 243; *Emmett* v. *Emmett,* 82 Tenn. 369.) The Supreme Court of Pennsylvania in an analogous case, *Cooke* v. *Doron, supra,* construed a statute of that commonwealth, authorizing aliens to take by descent, as entitling an alien husband to an estate by the curtesy in the lands of which his wife died seized. In the case cited, Catharine Doron and her brother, William E. Doron, were seized as tenants in common of certain real estate in Pennsylvania. In 1893, Catharine Doron married Joseph C. Cooke, a citizen of Great Britain and Ireland. Mrs. Cooke died on August 16, 1894, intestate and without descendants. Thereafter her brother refused to recognize that her husband had an interest in the land as tenant by the curtesy. Cooke thereupon instituted an action to determine title to the challenged interest in the property. The particular issue presented was, whether an alien husband was entitled as tenant by the curtesy to the real estate, or the interest therein, of which his wife

died seized. Several Pennsylvania statutes related to the rights of aliens, and, in particular, an act of February 23, 1791, which provided "that alien citizens shall be capable of acquiring or taking by devise or descent lands and other real property within this commonwealth in the same manner as citizens of this State may or can do." The brother contended that the word "descent" employed in the statute did not technically include a tenancy by the curtesy. The court, in deciding adversely to this contention, observed: "In answer to this position it may be said that all modes of acquiring title to real property may be reducible to title by descent and title by purchase. The first includes title by act or operation of law, the second title by act or agreement of the parties. (4 Kent's Commentaries, p. 446.) * * * It is clear, on principle, that a tenancy by the curtesy is more in the nature of an estate by descent than by purchase. The great weight of authority is to this effect. Titles by curtesy and in dower, arising by operation of law upon the death of the wife or husband as the case may be, seem to fall properly under the head of title by descent. (4 Kent's Commentaries, p. 374.) It devolves upon him (the husband) as the estate of an ancestor does upon an heir. (1 Washburn on Real Property, p. 343.) * * * We can see no reason why an estate which devolved upon the husband by operation of law at the death of his wife should not be regarded as taken by descent. The trend of our legislation has been to treat alien friends in these respects as citizens. * * * In *Commonwealth* v. *Detwiller*, 131 Pa. 614, Mr. Justice Williams in discussing the enabling statutes so far as they relate to aliens, said: 'Even as to real estate, the distinction as between a resident alien friend and a citizen has disappeared in Pennsylvania, and nearly every other State in the union.' * * * *Cessante ratione, cessat ipsa lex.* The tendency of our legislation has been to enable aliens to take, hold and purchase real estate and other property in the same manner as other citizens. * * *

The common law rule is harsh and unjust, without justification under existing governmental conditions and manifestly at variance with the spirit of our institutions and the conscience of our people. Fortunately our statutes do not require its enforcement." While the decision of the Pennsylvania court rests upon the proposition that a tenancy by the curtesy partakes more of the character of an estate acquired by descent than purchase, we are of the opinion that the challenged right to dower is an estate created by operation of law. The legal right to the estate attaches upon marriage and it does not become consummate until the death of the consort. The opinion in *Cooke v. Doron, supra,* is persuasive, however, inasmuch as it indicates and harmonizes with a tendency to reach a result favorable to the right of aliens to acquire property in the same manner as native-born Americans, and, in particular, the rights of dower in widows of our citizens, whether the widows be foreign-born or Americans.

Neither the Dower act nor the Alien act purport to deny the alien widow of an American citizen the right to dower. A statute itself affords the best means of its exposition, and if the legislative intent can be ascertained from its provisions that intent will prevail without resorting to other aids for construction. (2 Lewis' Sutherland on Stat. Const. (2d ed.) secs. 348, 366; *Coon v. Doss,* 361 Ill. 515.) If the legislature had intended to exclude alien widows of American citizens from the beneficent provisions of the Dower act, appropriate language to accomplish that purpose undoubtedly would have been incorporated in the statute.

The decree of the superior court is affirmed.

*Decree affirmed.*

Mr. JUSTICE FARTHING, dissenting:

I cannot agree with the majority of the court in the decision of the issue presented by this case. It is said that when the Dower act was passed and thereafter until 1922,

every woman who might lawfully be naturalized became an American citizen upon her being married to a citizen of this country. This is not true if the first and second sections of the Dower act are considered as having been adopted in 1845. Prior to the passage of the second section of the act of Congress of February 10, 1855, (10 Stat. at L. 604,) the provision was made by an act of 1804, (2 Stat. at L. 292,) that when any alien who had declared his intention to become a citizen in the manner provided by law died before he was actually naturalized, his widow and children should be considered as citizens of the United States and entitled to all rights and privileges as such upon taking the necessary oath. (*Minor* v. *Happersett,* 21 Wall. 162; 22 L. ed. 627.) But the provision entitling an alien woman to citizenship upon her marriage to a citizen, was not made until the act of 1855. If the rule of law be recognized that the re-enactment of sections 1 and 2 of the Dower act in 1874, worked a continuation of the previous law, alien widows of citizens would not be entitled to dower if such alien woman married a citizen after September 22, 1922, when Congress did away with naturalization of alien women by their marriage to citizens.

*Cooke* v. *Doron,* 215 Pa. 393; *Breuer* v. *Beery,* 194 Iowa, 243, and *Emmett* v. *Emmett,* 82 Tenn. 369, are relied on to sustain the conclusion that dower is more a matter of descent than a matter of purchase, in considering the nature of and acquisition of the estate of dower.

While the opinion of the majority recognizes the fact that the decision in the *Cooke case* was based on a Pennsylvania statute, still that decision is quoted from at length on the very point that rights acquired in real estate by a surviving spouse are created by descent rather than by purchase. The holdings in Illinois have been uniform to the effect that dower is created by purchase and not by descent.

There is no existing statute in Illinois which expressly provides that an alien widow of a deceased citizen shall

be entitled to dower. The appellee's right to dower, if it exists, must be determined by a construction of the Dower and Alien acts. At common law, both in England and in our country, alien widows were not entitled to dower. (*Sisk* v. *Smith,* 1 Gilm. 503; *Proctor* v. *Titcomb,* 22 Me. 300; *Priest* v. *Cummings,* 20 Wend. (N. Y.) 338; 2 Blackstone's Com. (12th ed.) p. 130.) We have held that our Dower act merely recognizes, and in a few respects modifies, the common law, and that, therefore, dower is not primarily a creature of statute. (*Canavan* v. *McNulty,* 328 Ill. 388; *Steinhagen* v. *Trull,* 320 id. 382; *Sisk* v. *Smith, supra.*) Since alien widows were not entitled to dower at common law they are not entitled to dower in this State unless it is expressly or impliedly granted by our statutes.

Section 1 of "An act concerning the rights in real and personal property accruing by reason of the marital relation," commonly known as the Dower act, approved March 4, 1874, as amended by an act approved June 24, 1927, (Laws of 1927, p. 406; 41 S. H. A. 1; State Bar Stat. 1935, chap. 41, par. 1;) abolishes the estate of curtesy and provides that the surviving husband or wife shall be endowed of one-third of all lands of which the deceased spouse was seized of an estate of inheritance at any time during the marriage, unless the same shall have been released in legal form. Equitable estates are also made subject to dower, and by the amendment of 1927 to this section, except where the deceased spouse died intestate, the surviving spouse is given one-third of the personalty if there are children and one-half of the personalty if there are no children. The personal property is made subject to the just debts and claims against the deceased's estate. By section 2 the surviving husband or wife of an alien is given the right to dower the same as if such alien had been a native-born citizen of the United States.

Statutes similar to section 1 of the Dower act have been in effect in this State when aliens were forbidden to own real estate. The first enactment of the present sections 1 and 2 of the Dower act was in 1845. The Revised Statutes of 1845 (at page 198) show that section 2 is identical with the present section 2, and that section 1 is the same except that it then was applicable to widows alone and did not contain the provisions with reference to personal property. The Alien act of 1845 (Rev. Stat. 1845, chap. 4, p. 47,) conferred the right to take lands, and to alienate, sell, assign and transmit the same, upon "all aliens residing within this State," but there was no provision that entitled the widow of an alien to dower. To meet this, section 2 of the Dower act was adopted in that year. It is clear from this that section 1 of the Dower act was not intended to apply to widows of aliens. In addition there were provisions in the statutes during the time sections 1 and 2 of the Dower act have been in force, denying the right to non-resident aliens to take and hold title to lands in this State. Thus, the Alien act of 1887 (Laws of 1887, p. 5,) made non-resident aliens incapable of acquiring title to or taking or holding land in this State, except that the heirs of aliens who had theretofore acquired lands in the State under the laws thereof, and the heirs of aliens who might acquire lands under the act of 1887, were permitted to take such lands by devise or descent and hold title for three years if such alien was then twenty-one years old, and if of less age then for five years.

At common law aliens had no inheritable blood and were incapable of taking by inheritance. The laws of 1819, page 6, made it lawful "for any foreigner or foreigners, alien or aliens, not being the legal subject or subjects of any foreign State or power, which is or shall be at the time or times of such purchase, at war with the United States of America, to purchase lands, tenements

and hereditaments within this State, and to have and hold the same to them, their heirs and assigns forever," the same as a native-born citizen might do. The revised laws of 1827, page 49, gave aliens the right to hold lands in the same manner as citizens, and made express provision that alien widows should have the right to dower, but this act was repealed in 1845 and never re-enacted. The act of 1845 (Rev. Stat. 1845, chap. 4, p. 47,) conferred the right to take lands, and to alienate, sell, assign and transmit the same, upon "all aliens residing in this State." By the act of 1851 (Laws of 1851, p. 149,) the words "residing in this State," after the words "all aliens," were omitted from the foregoing provision, so as to confer upon all aliens the right to take lands by deed, will or otherwise, and to alienate, sell, assign and transmit the same, whether they resided in Illinois or elsewhere. The act of 1887, as we have already pointed out, deprived non-resident aliens of this right, with the exceptions we have already noted.

The act now in force is that of 1897. Section 1 thereof (Laws of 1897, p. 5; 6 S. H. A. 1; State Bar Stat. 1935, chap. 6, par. 1;) provides: "All aliens may, subject to the further provisions of this act, acquire and hold title in fee simple, or otherwise, to lands, tenements and hereditaments, situate in this State, by deed, devise or descent, and may alienate, sell, assign, encumber, devise and convey lands, tenements and hereditaments, whether the same have been heretofore or be hereafter acquired, and the title to any lands of which an alien may die seized or possessed intestate, shall descend to the heirs-at-law, and no person shall be deprived of his right to take title to real estate as heir-at-law by descent from any deceased person because he may be an alien or be compelled to trace his relationship to such deceased person through one or more aliens." By section 2 of the present act the right of an alien to hold title to real estate is lim-

ited to six years; if such alien is a minor it is six years after he becomes of age. The other sections of this act are not material to the case before us.

Referring again to the Dower act, the precise point has not been presented to this court, but in passing on a similar act the Supreme Judicial Court of Massachusetts, in *Foss* v. *Crisp,* 20 Pick. 121, said: "The statutes of the commonwealth touching the descent of any real estate were intended to apply to citizens and not to aliens, unless they were particularly named. For example, by the statute of 1783, (chap. 36, par. 4,) it is provided that the widow of the deceased shall in all cases be entitled to her dower in the real estate of her husband. Now that provision was intended to apply to widows who were citizens of the commonwealth, and not to alien women who were widows."

In *Wunderle* v. *Wunderle,* 144 Ill. 40, a somewhat similar situation arose, although not under the Dower act. A suit for partition was there filed by the non-resident alien heirs of a citizen. The 1887 Alien act was then in force, and section 1 of it provided that non-resident aliens should not be capable of acquiring title to or taking or holding any lands or real estate in this State by descent, devise, purchase or otherwise, except that the "heirs of aliens who have heretofore acquired lands in this State under the laws thereof and the heirs of aliens who may acquire lands under the provisions of this act may take such lands by devise or descent and hold the same for a space of three years," etc. We refused to allow the alien heirs of a citizen to partition the lands of which he died seized. At page 61 of that decision we said: "It is urged that the act of 1887 should be liberally construed, and that such liberal construction would have the effect of extending the exception named in section 1 to the alien heirs of citizens, as well as to the heirs of aliens. In other words, we are asked to so construe the exception as to give the non-resident alien kin-

dred of citizens the right to take lands by descent or devise, and hold the same for three or five years so as to make sale, or acquire an actual residence in the State. This would involve the insertion of the words 'and the alien heirs of citizens' after the words 'except the heirs of aliens.' By such a construction we would make the legislature say what it has not said. It is not the province of the judiciary to make laws, but to construe and interpret them and pass upon their validity." The *Wunderle case* is cited with approval and followed in *State* v. *Toop*, 107 Neb. 39, 186 N. W. 371.

In *Mick* v. *Mick*, 10 Wend. (N. Y.) 379, it was held that under the New York statutes then in force an alien widow of a citizen could not take dower, although, had the husband been an alien, she would have been so entitled. To the same effect are the cases of *Priest* v. *Cummings*, 20 Wend. (N. Y.) 338, *Connelly* v. *Smith*, 21 id. 58, and *Currin* v. *Finn*, 3 Denio, (N. Y.) 229.

In my judgment the first section of the Dower act refers only to citizens. To adopt appellee's construction of the statutes would compel us to amend the Dower act by legislating into it a further provision giving alien widows of citizens the right to dower, just as we said we would be forced to do in the *Wunderle case* with reference to the Alien act if we permitted the non-resident alien heirs of a citizen to take title to his lands by descent. The majority decision herein has pointed to no provision of the statutes which removes the common law bar against her and permits her to take dower.

This court discussed the nature of dower in the case of *Sutherland* v. *Sutherland*, 69 Ill. 481, and said: "The right of dower exists independently of the rights of the heir, and it is in no way affected by them. The right to dower is perfect where there has been an ownership in real estate by the husband during coverture, and the wife sur-

vives the husband, although the ownership by the husband may have been but momentary. The inchoate right to dower attaches the moment the husband's right to the realty attaches, during coverture, and he cannot convey or encumber the property so as to divest or prejudice that right, without the wife's consent, given in the manner provided by statute; nor can his creditors, by any proceeding to be instituted by them, destroy or impair the right. The heir, on the other hand, has no interest whatever in the property until the intestate's death, nor can it even be known, certainly, until that event shall have happened, who will be the heir. The inheritance may be conveyed away by the intestate in his lifetime, or it may be exhausted by creditors after his death, so as to deprive the heir of everything to which he might otherwise be entitled. The dissimilarity in the origin, character and duration of the two estates must be plain to every apprehension; and we cannot presume that words strictly descriptive of the one would be used to describe the other."

Descent is hereditary succession to an estate in realty. It means the title by which one person, upon the death of another, acquires the real estate of the latter as his heir-at-law. (*Adams* v. *Akerlund,* 168 Ill. 632; *Beavan* v. *Went,* 155 id. 592; *Meadowcroft* v. *Winnebago County,* 181 id. 504, 507; *Priest* v. *Cummings,* 20 Wend. (N. Y.) 338.) When the legislature provided in section 1 of the Alien act of 1897 that aliens could take property by deed, devise or descent it did not confer the right of dower upon the alien spouse of a deceased citizen for the reason that the word "descent" cannot be given any other than its legal meaning. The language of the present act is not as liberal or broad as that used in the earlier alien laws, which provided that land acquired by any means could be held by aliens in all respects as if they were United States citizens. We must presume that the legislature knew the legal meaning of the terms used in the present Alien act and used them design-

edly. The naturalization of appellee after the death of her husband could not give her a dower right which she did not possess at his death.

Mr. JUSTICE STONE concurs in this dissent.