BARRETT POTTER, JUDGE, *versus* EUNICE TITCOMB, EX'X.

Where the domicil of one owning real estate here was in a foreign country at the time of his death, no law of the country of his domicil can control the descent and distribution of his lands in this State, or have the slightest influence here upon it.

A widow, who was an alien and who with her husband, at the time of his death, were domiciled in a foreign country, cannot come into this State, and claim under our laws, by reason of her husband's having died without issue, the half of his real estate situated here.

If a will be made in a foreign country by one domiciled there, and it be there duly established as his will, it can have no operation upon his real estate here, unless made and executed in conformity with the laws of this State.

But it would seem, that such will is sufficient to pass to a legatee personal property found here.

Where the heirs at law have been admitted to prosecute an administrator's bond and recover judgment thereon for their share of the amount due, without a decree of distribution, the widow may sue out a *scire facias* to recover her share, without first obtaining a decree of distribution in her favor.

A contract cannot be rescinded, on account of fraud in obtaining it, without mutual consent, if circumstances be so altered by a part execution, that the parties cannot be put in *statu quo ;* for if it be rescinded at all, it must be rescinded *in toto.*

SCIRE FACIAS by the administrator of Elizabeth Titcomb, who was the widow of Moses Titcomb, deceased, on whose estate Joseph Titcomb was administrator, to have execution for one half of the amount of a judgment formerly recovered against Joseph Titcomb, founded on official delinquency in fraudulently concealing a debt due to the estate from the administrator himself and neglecting to account for the same. During the pendency of this *scire facias* Joseph Titcomb died, and Eunice Titcomb became executrix of his will. The last trial was before WESTON, late C. J. It there appeared that Elizabeth, the widow of Moses Titcomb, was an alien, and that Moses Titcomb, at the time of his decease, was domiciled at the Island of St. Croix, which was subject to the King of Denmark. He left no issue. It did not appear what was the law at that island, by which the personal estate of a party deceased was to be distributed, but by the law of Massachusetts,

then in force here, a widow under such circumstances would be entitled to one half of the personal estate. Questions arising in the original action and in this *scire facias* have already been five times before the Court, and may be found in 7 Greenl. 303; 1 Fairf. 53; 2 Fairf. 157 and 218, and 3 Fairf. 55. If any one should desire a fuller statement than is given in the opinion of the Court, he is referred to those cases for its history.

The question of fraud in respect to the assignment was submitted to the jury, and also the question whether it was not ratified and confirmed by the final settlement in 1810. The presiding Judge stated to the jury, that if the widow had been deceived with regard to the existence of the debt, they would consider, whether upon the whole she had been defrauded; that the widow was not entitled by law to participate in the real estate in Massachusetts, of which Maine was then a part; that she had interposed difficulties to coerce the heirs into an allowance of her claim to a moiety of this estate; that a resort to indirection on the part of the heirs to diminish this claim, though it might be morally wrong, did not entitle her to open and repudiate the settlement, and to sustain further claims against the estate, if she had already received more than she had a legal right to claim; that although she had not been allowed a moiety of this debt, about 2000 dollars, to which she was entitled, she had been allowed a much larger sum, $23,000, on account of the real estate to which she was not entitled; that all these facts were to be taken into consideration by the jury; and a strong opinion was expressed to the jury by the Judge, that she was not upon the whole defrauded, and not therefore entitled to sustain by this action, through her representative, any further claim to the estate in this country.

The jury returned a verdict for the defendant, adding, upon inquiry put to them, that they were of opinion, that Henry Titcomb had practised fraud and deception upon the widow, yet that she was not defrauded thereby of her rights, taking the whole matter into consideration.

The correctness of the instructions to the jury, and the whole case were submitted to the consideration of the whole Court.

The case was elaborately argued at the April Term in this county, 1842, by *Preble,* for the plaintiff, and by *Daveies,* for the defendant.

For the plaintiff, the case *Potter, Judge, v. Titcomb,* 7 Greenl. 303, was cited.

For the defendant were cited *Potter J. v. Titcomb,* 2 Fairf. 157; Story's Conf. of Laws, § 481, 395; 3 Hazzard, 403; 1 Binney, 336; 1 Greenl. 148. To the point that a contract must be wholly rescinded, and cannot be in part only, and within a reasonable time. 2 Shepl. 364; 14 Pick. 466; 1 Sumn. 509; 2 Pick. 184; 12 Pick. 307; 2 Kent, 480; 2 Fairf. 227; 5 East. 459; 4 Mass. R. 502; 15 Mass. R. 318; 1 Metc. 547; 3 Greenl. 30; 4 Greenl. 306; 7 Greenl. 13; 3 Fairf. 278; 3 Peters, 201. That the Court will not inquire into the terms of a compromise. 1 Sim. & St. 288, 564; 14 Ves. 91. To rescind a contract for fraud, the party must not only have had false representations made to him, but he must thereby have been misled to his injury. 2 Kent, 488; 1 Story's Eq. § 203; 12 East. 637; 1 Greenl. 376; 2 Shepl. 364; 3 Shepl. 225.

The opinion of the Court, SHEPLEY J. having been of counsel in the original action, and taking no part in the decision, was drawn up and read at the April Term, 1844, by

WHITMAN C. J. — It is important in the first place to understand what rights Elizabeth Titcomb, if living, could claim as the widow of Moses Titcomb, under the laws of this State. She was an alien, and, with her husband, was domiciled in St. Croix, an island in the West Indies, under the dominion of the King of Denmark. Her husband having died possessed of a considerable real estate situate in this State, and having debts due him here, administration was granted to Joseph Titcomb, the defendant's testator, to take charge of the same. This administration must be considered as ancillary to the administration in the place of the domicil of Elizabeth and her husband.

She could not come into the court of probate here, as the widow of her husband, and make a claim, such as she might if she and her husband had both been citizens of, and domiciled in, this State. She could not here claim an allowance to be made to her of the personal estate of her husband. She could not, being an alien, claim to be endowed of the real estate, either by the assignment of the probate court, or at common law. 1 Inst. 31 (b,) 32 (a.) And she could not, under the ancillary administration here, claim, by reason of her husband's having died without issue, to have one half of the net amount of the personal estate distributed to her by the probate court here. And if she could, she would be entitled to such one half only upon the final settlement of the estate, after the payment of all debts due from it, both here and elsewhere. She then by our statutes, under the administration of the estate in this State, as the widow of Moses Titcomb, had no rights whatever. Her administrator here can have no other rights than she would have had, if living, of which, by statute law, in this State, we have seen, as the widow of Moses Titcomb, she had none.

She would then, as the ground-work of any claim, which she might have had by succession to any of the estate, of which her husband died possessed, be remitted to the law as existing in the place of the domicil of herself and husband. Of the law of that place, as to the successions to estates, the case furnishes no evidence. And it is clear, that no law existing there could control the descent and distribution of real estate, or have the slightest operation here, upon it. The " *Lex loci rei sitæ*" is the only law which has ordinarily any controling power over such estates.

But it appears that Moses Titcomb left a will, which was duly established under the government of the Island of St. Croix, in which he bequeathed the one half of his real and personal estate to his widow. This will was not made and executed in conformity to the laws of this State, and cannot therefore have any operation upon the real estate here. And it is contended, as by our law a will purporting to be made

with a view to the disposition of· real as well as of personal estate, if not valid for the former, is not so for the latter, that the widow in this case could not derive any right under it to the latter. The statute of wills in this State was made with a view to the disposition of estates of its citizens, domiciled within it, and had no view to the effect and operation of testaments made by foreigners in their own country. If a will be made, therefore, in a foreign country, which, by the laws in force there, is sufficient to vest in a legatee the personal estate of the deceased, as such an estate has no *situs*, it might pass such estate here, as well as elsewhere. The will of St. Croix seems to have been considered entirely sufficient to pass to the widow the one half of the personal estate ; and whether it might be found here or elsewhere would seem to make no difference. Story's Conf. of Laws, § 380 and 384. And this Court, in the original suit on the bond, relied upon in this case, manifestly so considered it. Otherwise, in rendering judgment in that case, they would not have required that the heirs of Moses Titcomb, deceased, should release to the assignee of his widow's half of the personal estate here any claim they might have thereto. This they surely would not, and legally could not have done, if they had not considered that she had under the will a valid title to such half. We must therefore regard the original right of the widow to the moiety of the personal estate of her deceased husband, although to be sought for in this State, as well established ; although but for this adjudication we might well entertain doubts upon this point.

But it is contended that she could not have been admitted to prosecute this *scire facias* until after a decree of distribution. The heirs however have been admitted to prosecute this bond without any such decree of distribution, and to recover their half of the amount due under it. And it would seem that whoever has a right to the other half should be entitled to maintain a *scire facias* to recover it. Besides, no decree of distribution could have been made while it remained uncertain what the amount recoverable would be. After the amount was ascertained, the court as the supreme court of probate,

made a distribution, assigning to each of the heirs their appropriate and respective parts of one half the fund. And by reserving the other half, as pertaining to the right of the widow, may be regarded as having virtually decreed a distribution of that half also, to the widow or her assignee. Her administrator therefore may be regarded as *rectus in curia* to claim it, if she had not by her own act divested herself of the right to make claim to it. This it is contended she has done.

In 1805, the year after the decease of her husband, she entered into a contract with Henry Titcomb, one of the heirs of her husband, living in this country, and who had been dispatched to St. Croix, as the agent of the others; and for the consideration therein expressed, assigned all her right to any and every part of the personal estate, to which she was, in any manner entitled, remaining in the United States, to him. She, however, afterwards, learning, that there was more property in the United States than she had been aware of, and considering herself as having been imposed upon and overreached in the contract with Henry Titcomb, became uneasy, and instituted proceedings at law in St. Croix to avoid the effect of it. The heirs thereupon despatched a Mr. Metcalf to St. Croix, who, in their behalf, effected another or additional compromise with the widow, wherein various concessions and stipulations were contained. Among them is a ratification of what she calls the exchange of property, made between herself and Henry Titcomb; and after reciting that the property in America, according to the probate records, amounted to. $60,000, of which, according to the will, she was entitled to one half, yet, to obtain a final settlement, she is willing to accept $23,000. This proposition being acceeded to, the compromise was signed, and there is no pretence but that the $23,000 was duly paid. The operation of those two instruments to discharge the claim, which she could have made to the sum in question, is not disputed, provided the compromises were entered into without fraud or deception, practiced by the heirs or their representatives in obtaining them.

The jury have found, that Henry Titcomb did practise fraud and deception in obtaining the first, but there is no pretence that Metcalf did any thing of the kind in obtaining the last. In the last she obtained $23,000, in consideration of an equitable claim set up under the will, to the half of the real estate in this country, to which she had no legal title. It may be that, but for the concealment by Henry and Joseph Titcomb, of the existence of the debt in question, she would not have executed those instruments; and indeed it may be presumed that she would not.

She at the time of executing the last agreement, as well as of the first, was without doubt, deceived as to the existence of this debt.

The original concealment therefore may be believed still to have had its operation upon her mind. And this it is contended should have the effect to prevent those instruments from operating as a bar to the plaintiff's recovery; and on the decision of this point the cause must turn.

Are we authorized, under existing circumstances, to treat these instruments as nullities? They were contracts entered into in solemn form. Various proceedings of great magnitude, have taken place under them. Under the last agreement the widow was paid the sum of $23,000. Various changes in pursuance of the other articles therein, and in faith thereof, were effected in St. Croix. Thirty years or more have since elapsed. The large estate in that island, relying upon the efficacy of the articles of compromise, must have been allowed to experience a great variety of modifications. The widow has since deceased, and her share of it has, doubtless, been distributed among her heirs and relations. It is in the nature of things impossible, it may, and indeed must be believed, at this day, to reinstate things as they were at the time of executing the deeds of compromise. Yet if these contracts are to be treated as nullities in any part, they should be so for the whole. "A contract," says Chancellor Kent, "cannot be rescinded without mutual consent, if circumstances be so altered, by a part execution, that the parties cannot be put *in statu*

*quo ;* for if it be rescinded at all it must be rescinded *in toto.*" 2 Kent. 480.

This doctrine is recognized in a great variety of authorities, both English and American ; and is most explicitly and emphatically laid down by Mr. Chief Justice Parsons in *Kimball* v. *Cunningham,* 4 Mass. R. 502. We, therefore, find ourselves bound to come to the conclusion that the agreements between the heirs of Moses Titcomb, deceased, and his widow, are in full force, and uncancelled ; and that they must operate *to bar* the plaintiff of a right to recover in this action.

This obstacle to the right of the plaintiff to recover may not in form be precisely that, which prevailed in behalf of the defendant at the trial ; and we find on file a motion for a new trial grounded upon supposed misdirections of the Judge to the jury. The Judge, however, in his report, says, the correctness of his instruction to the jury " and the whole case is submitted to the consideration of the Court, that judgment may be rendered on the verdict, or the same set aside and a new trial granted as they may be legally advised."

We thereupon, having examined the whole case, have come to the conclusion, that the verdict is such as would be authorized upon a new trial. And, indeed, whenever it is apparent that a verdict is, as it must necessarily be returned upon a new trial, it would be worse than useless to set it aside, although there may have been some irregularities in obtaining it.

*Judgment on the verdict.*