## SUPREME COURT.

OCTAVIA BOYCE, by her next friend, &c., agt. THE CITY OF ST. LOUIS, and others.

Where a *municipal corporation* claims real estate as devisee under a will, the will must not only have been executed and attested according to the forms and solemnities prescribed by the law of the *situs*, but the claimant must by the law of the *situs* be capable of taking by *devise*, no matter what may be the law of the domicil of the testator or devisee, or where the will was executed.

If the claimant is a *foreign corporation* claiming as devisee, then not only the capacity of such corporation to take and hold real estate as devisee, but by its charter, is to be determined by the law of the *situs*.

Therefore, where the *City of St. Louis*, in the state of Missouri, claimed real estate situated in the state of Missouri, and also in the city of New-York, as devisee under a will made and executed according to the laws of Missouri by the testator, who was a resident, and who died in St. Louis,

*Held*, that it was for the courts of this state to determine whether the city of St. Louis had, as devisee, any right or interest in or to the lands in New-York, of which the testator died seized, and for that purpose to give construction to its charter; as it was for the courts of Missouri to determine the same questions as to the lands in Missouri of which the testator died siezed; according to the local law in either case.

It was also *held*, that the city of St. Louis could not take and had no right or interest in the real estate in New-York, for the reason, 1st. Because by its charter it was not authorized to take or hold such real estate, either upon the trust,

Boyce agt. The City of St. Louis.

or for the use or purpose mentioned in the will, or for any other use or purpose.

2d. Because, by the law of this state, in force when the testator died and his will took effect, and still in force, no devise to a corporation could be valid, unless such corporation was expressly authorized by its charter, or by the statute, to take by devise.

*It seems*, that if the city of St. Louis had been expressly authorized by its charter or by a statute of Missouri to take by devise, it could not take or hold the real estate in New-York as *devisee*, in contravention of the law of this state. *(The case of Beekman agt. The People, 27 Barb. 272, commented upon and dissented from in part.)*

*New-York Special Term, November,* 1859.
ACTION for partition.

R. M. HARRINGTON, *for plaintiff.*
DANIEL LORD, *for the City of St. Louis.*
M. S. BIDWELL, *for infant defendants, &c.*

SUTHERLAND, Justice.   This is an action for partition of certain real property in the city of New-York, of which one Bryan Mullanthy, late of the city of St. Louis, in the state of Missouri, died seized, leaving him surviving, as his only heirs-at-law, five sisters.

Since his death, one of the sisters has died leaving a husband and several children her surviving.

The parties to this action, other than the city of St. Louis, are the four surviving sisters and their husbands, and the surviving children and husband of the deceased sister.

The city of St. Louis is made a party defendant, as claiming one equal undivided third of the real property sought to be partitioned, under an alleged last will and testament of the said Bryan.

The city of St. Louis in her answer sets up such last will and testament, and a devise and bequest to her by it, of one undivided third of all the testator's property real and personal.

A copy of an instrment in writing, purporting to be such last will and testament, is produced on the hearing; and it is admitted by the parties, that the will of the said Bryan, re-

ferred to in the answer, was by him executed in such form of law, as to subscribing, publishing and attestation, as was sufficient to devise real estate in this state, and that he was in law competent to devise; and by stipulation between the parties such copy was read in evidence in the place of the original.

By the will, the testator leaves to the city of St. Louis one equal undivided third of his property, real, personal or mixed, " to be and constitute a fund to furnish relief to all poor emigrants and travellers coming to St. Louis, on their way *bona fide* to settle West."

There is no testamentary disposition of the other two-thirds of the testator's property.

He also died seized of various lots and parcels of land in Missouri, some of them lying within and some of them without the limits of the city of St. Louis.

The testator at the time of his death was a resident of St. Louis, and domiciled there; and the will was executed, and he died there.

In an action or proceeding instituted in the "St. Louis Land Court," for the partition of the real estate in Missouri between the heirs-at-law, to which the city of St. Louis was made a party, that court adjudged that the city of St. Louis was entitled to, and could take and hold, as devisee under the will, the third of such real estate in Missouri.

The plaintiff in this action insists that the city of St. Louis has not the legal capacity to take or hold the said bequests or devises to it made, or the legal capacity to receive or carry into effect the trusts therein created; and that it has not by its charter the power or capacity to take or hold the property so bequeathed or devised to it.

The city of St. Louis insists preliminarily, that these questions cannot be contested or properly determined in this partition suit; but if they can, then she insists upon her right to take and hold as devisee under the will, and she further insists, that the adjudication of the Missouri court, on the question of her capacity to take and hold as such devisee under her charter, should control this court.

I have no doubt that the city of St. Louis was properly made a party in this action, and that it can properly be determined in this action, whether she has any right or interest in or to the real estate thereby sought to be partitioned. Her claim is antagonistic, but she is not in possession.

As to the adjudication of the Missouri court on the question of the capacity of the city of St. Louis to take as devisee under the will, and the effect or authority it should be permitted to have here, it is necessary to advert to the principle of the common law, that a title or right in or to real or immovable property can be acquired, enforced or lost, only according to the law of the place where such property is situated, the *lex rei sitae.*

This principle applies as well to the capacity of the claimant to take or hold the real estate, as to the sufficiency in form or effect of the instrument, title or evidence of title, under which the claim is made or sought to be enforced. (*Story on Confl. of Laws,* §§ 428, 430, 474; *Nicholson* agt. *Leavitt,* 4 *Sandf.* 276; *Hosford* agt. *Nichols,* 1 *Paige,* 226; *Chapman* agt. *Robertson,* 6 *Paige,* 627.)

If the law of the *situs* excludes aliens from holding lands, then an alien cannot take, no matter what may be the law of his domicil. If the claimant claims as *devisee,* then the will must not only have been executed and attested according to the forms and solemnities prescribed by the law of the *situs,* but the claimant must by the law of the *situs* be capable of taking by *devise,* no matter what may be the law of the domicil of the testator, or devisee, or where the will was executed.

If the claimant is a foreign corporation claiming as devisee, then not only the capacity of such corporation to take and hold real estate as devisee, but by its charter, is to be determined by the law of the *situs.*

Of course it belongs to the courts of the state or country where the real estate is situated, to declare and apply the law on the question of the capacity or right of the claimant.

This principle of local jurisdiction and of the application of the local law to real estate, results from the independent sov-

ereignty of states or countries, and from settled principles of international law.

In England and in this country the principle may be said to be practically without an exception; and so far has the principle been carried in England, that in a recent case (*Birthwhistle* agt. *Vardil*, 7 *Clark and Fin.* 895), the opinion of the court of king's bench, that a son, born of Scottish parents before marriage in Scotland, who was afterwards legitimatized by the subsequent marriage of his parents there, could not as heir inherit lands in England, because, by the law of England, affirmed by the statute of mortmain, no one could be heir or inherit lands, unless born within lawful wedlock, was after two arguments affirmed by the House of Lords.

In the United States, the sovereignty of the several states is qualified by the constitution of the United States, and in certain cases the supreme court of the United States has concurrent jurisdiction with the state courts even as to real estate; but in exercising such jurisdiction, the supreme court of the United States follows and applies the state law, and adopts the well-settled judicial interpretation by the state courts of the state law. Applying this principle to this case, it is clear, that it is for the courts of this state to determine, whether the city of St. Louis has as devisee any right or interest in or to the lands in New-York, of which the testator died seized; as it was for the courts of Missouri to determine the same question as to the lands in Missouri, of which the testator died seized; according to the local law in either case.

Without raising the question, whether a foreign corporation, in the absence of any law of this state to the contrary, has the same right to take and hold land in this state that it has in the state where it was created, but conceding such right, it is clear, as to real estate in this state, claimed by such foreign corporation, that it is for the court of this state to construe its charter, and determine whether it is authorized by its charter to take or hold such real estate, (*Nicholson* agt. *Leavitt 4 Sandf.* 276, *Sup.*), and that an adjudication upon the question of its corporate capacity, by a court of another state, can and ought

to have no further effect or authority, than the reasoning upon which it may have been founded gives it.

In this case, the proceedings and judgment of the Missouri court, in the action or proceeding instituted in Missouri for the partition of the real estate of which the testator died seized in that state, appear, from a transcript thereof, properly authenticated; but the grounds upon which the decision was made do not appear.

I am of the opinion that the city of St. Louis could not take, and has no right or interest in, the real estate sought to be partitioned in this action, for two reasons.

1st. Because by her charter she is not authorized to take or hold such real estate, either upon the trust, or for the use and purpose mentioned in the will, or for any other use or purpose.

2d. Because, by a law of this state, in force when the testator died and his will took effect, and still in force, no devise to a corporation could be valid, unless such corporation was expressly authorized by its charter or by statute to take by devise.

As to this second reason, it is sufficient to refer to the law (3 *Rev. Stat.*, 5*th ed.*, 138, § 3), and to say that the city of St. Louis is not expressly authorized by its charter to take by devise, and that it does not appear that there is any statute of this state, or of the state of Missouri, authorizing it to take by devise.

I do not mean to intimate, if the city of St. Louis had been expressly authorized by her charter or by a statute of Missouri to take by devise, that she could take or hold the real estate in question as *devisee*, in contravention of the law of this state.

As to the other reason or ground upon which I put my decision, it is only necessary to transcribe that portion of the charter giving the power to take and hold property.

By the charter, the city of St. Louis "may purchase, receive and hold property, real and personal, within said city, and may sell, lease or dispose of the same for the benefit of the city, and may purchase, receive and hold property, real and

personal, beyond the limits of the city, to be used for the burial of the dead of the city, also for the erection of water-works to supply the city with water, and also for the establishment of a hospital for the reception of persons infected with contagious and other diseases, also a poor-house, work-house or house of correction, and may sell, lease or dispose of such property for the benefit of the city, and may do all other acts as natural persons," &c.

It will be seen at a glance, that not only are the purposes for which she may purchase, receive and hold property beyond the city limits particularly specified and limited, but also, that the property, if real estate and beyond the limits of the city, must be near enough to the city to admit of its being used or held for one or more of the specified purposes.

It would appear, that by the charter she is not authorized to take or hold real estate in New-York for any purposes; certainly not for any or either of the purposes specified in the charter, nor do I think she is authorized by the charter to receive or hold property, within or without the city, in trust for the charitable use and purpose mentioned in the will of the testator.

A corporation derived from prescription, and resting upon the common law for its powers and capacities, may have quite undefined powers as to taking and holding real estate, and in other respects; but I take it to be a well-settled principle of law, that a corporation, created by a legislature, has no other powers than those expressly granted by the legislature, and such as are necessary to carry into effect those expressly granted. (*The People* agt. *Utica Insurance Co.*, 15 *John.* 350; *The New - York Firemen's Insurance Company* agt. *Ely*, 2 *Cow.* 678.)

The specification in this charter of the uses or purposes for which the city of St. Louis can purchase, receive and hold property beyond the limits of the city, and the grant of an express power by it, to purchase, receive and hold property beyond the limits of the city for these purposes, and within the city *for the benefit of the city*, imply a prohibition against taking

or holding property without the city, except for one or
more of the specified purposes, and even within the city except
for the benefit of the city. (*Cases last cited, and Jackson* agt.
*Hartwell, 8 John.* 422.; *Trustees* agt. *Peaslee,* 15 *New-Hamp-
shire,* 317.)

My conclusion is, therefore, that the city of St. Louis could
not, and did not take, as devisee under the will of Bryan Mul-
lanthy, any right, estate or interest, in or to, the real estate
sought to be partitioned in this action.

But, although the city of St. Louis had not capacity to take,
before the case of *Owens* agt. *The Missionary Society* (14 *New-
York R.* 380), there might have been a question whether the
charitable intention and purpose of the testator in making the
devise might not be carried into effect with the aid of the stat-
ute of 43*d of Elizabeth.* I assume, however, that it is settled
by that case, if the city of St. Louis had not the capacity to
take, that, as it respects the real estate in this state, such chari-
table intent and purpose cannot be carried into effect.

The result must be, that all the estate and interest which the
testator had in the lands sought to be partitioned in this action,
at the time of his death, on his death vested in his heirs-at-
law, as if he had made no will.

I do not think, that the provision of the Revised Statutes,
abolishing uses and trusts, except as authorized and modified
therein (1 *Rev. Stat.* 727, § 45), affects the question of the
validity of this devise, or would prevent the trust and charita-
ble use and purpose, upon and for which, the devise was made,
from being carried into effect, even as to the real estate in this
state.

I do not agree with what is said to that effect in *Ayres* agt.
*Methodist Episcopal Church, 3 Sandford,* 371 ; *Yates* agt. *Yates,*
9 *Barb.* 324; *Beekman* agt. *The People,* 27 *Barb.* 272 *to* 279,
*and in one or two other cases.* When the opinion in *Beekman*
agt. *The People* was delivered, I announced my dissent from
that portion of the opinion, stating at the same time that I
agreed in the conclusion to which Judge DAVIES had arrived,
and briefly the grounds upon which I so agreed, which mainly

were, that the testator in that case having bequeathed no particular sum for the dispensary, and having given no directions as to the amount to be used in its establishment, but leaving the amount wholly at the discretion of his executors, and the bequest of the surplus being a bequest of the surplus remaining after the establishment of the dispensary, and the executors having renounced the trust, I could not see how the court could appoint new trustees *and authorize them to exercise the discretion which the testator had given to his executors ;* that for the court to do so, it appeared to me, would in effect be making a will for the testator.

I make this statement here, certainly rather out of place, because the opinion of Judge DAVIES has been published in a pamphlet form and reported as the opinion of the court; whereas not only did I dissent, but I understood Judge CLERKE, also, to dissent from that portion of the opinion above referred to.

I think the views of the late Assistant Vice-Chancellor SANDFORD, expressed in *Kniskern* agt. *Lutheran Church, and in Shotwell* agt. *Mott, 1st and 2d Sandford's Ch. R.,* on the question of the application of this provision of the Revised Statutes to charitable uses, are the right views.

I think, too, it is fairly to be inferred from the cases of *Williams* agt. *Williams, and Tucker* agt. *St. Clemens' Church* (4 *Selden*), that the court of appeals approved of the views of Vice-Chancellor SANDFORD, expressed in the two cases before mentioned; and that the case of *Tucker* agt. *St. Clemens' Church,* which was a case of real estate, on a close examination, must be conceded to be a decision on the very question.