GODET, APPELLANT, v. REGISTRAR OF SAN JUAN, RESPONDENT.

APPEAL from a Decision of the Registrar of Property Refusing to Record a Declaration of Heirship.

No. 539.—Decided April 12, 1923.

RECORD OF TITLE—LEX LOCI—DECLARATION OF HEIRSHIP—ALIEN OWNING REAL PROPERTY IN PORTO RICO—PRIVATE INTERNATIONAL LAW.—A designation of heirs of an alien who was the owner of real property situated in Porto Rico should be made by the jurisdictional insular court in so far as the said property is concerned.

The facts are stated in the opinion.
*Mr. M. M. Ginorio* for the appellant.
The respondent appeared by brief.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

In the Registry of Property of San Juan there was presented a certified copy of a final judgment of the Court of First Instance of the Inclusa district of Madrid, Spain, dessignating Miguel Godet y Ladrón de Guevara as the sole and universal intestate heir of his sister Manuela Hilaria Godet y Ladrón de Guevara, who died unmarried in Madrid, Spain, on April 21, 1920. The copy of the judgment is properly authenticated and was presented in the registry for the purpose of recording in the name of the heir house No. 13 San José Street, San Juan, which is recorded in the name of the deceased.

The registrar refused the record in the following decision:

"Record of the preceding document is denied because as the estate is composed of real property situated in Porto Rico, the court of first instance of Madrid was without jurisdiction to make the declaration of heirship, in accordance with the provisions of sections 10 and 11 of the Civil Code, subdivision 4 of article 2 and article 5 of the Mortgage Law, article 52 of its Regulations, the decision of the General Directorate of Registries of February 8, 1866, and decisions of the Supreme Court of Porto Rico reported in volume 22, p. 369, and volume 24, p. 753, which require the said declaration to be made by an insular court, as provided by section 19 of the Special Legal Proceedings Act which makes the inheritance and the declaration of heirship subject to the *lex loci;* and a cautionary notice has been entered for the legal period at page 171 of volume 25 of San Juan, property number 1051, entry letter A."

The applicant took the present appeal. In his brief he contends that although the extent of the right of succession should be governed by the law of Porto Rico, the decision declaring such right having been made in Spain, it should be governed by the Spanish law. He cites in support of his contention section 66 of the Law of Evidence and the cases

of *Hecht* v. *Hecht,* 12 P. R. R. 219, and *Rojas, Randall & Co., Inc.,* v. *Registrar,* 27 P. R. R. 20. The appellant considers a declaration of heirship to be the same as a will executed in Spain by a Spanish subject and presented in a registry of property of Porto Rico for the same purpose for which the declaration of heirship was presented, and he also seems to consider the said declaration similar to a deed executed in a foreign country and containing a contract of purchase and sale of real property situated in Porto Rico.

The registrar's decision does not show the question to be exactly that. The registrar maintains that the estate being composed of real property situated in Porto Rico, the Madrid court was without jurisdiction to make a declaration of heirship as to the said property, the jurisdiction being vested in the competent district court in Porto Rico.

With regard to what law governs the conveyance of real property in this Island, there is no doubt. In the case of *Colón* v. *Registrar of Aguadilla,* 22 P. R. R. 344, a very careful study was made of the provisions of the Civil Code on the matter, as revised by the Legislative Assembly of Porto Rico, and it was held:

"Construing sections 9, 10, 11, 282 and 284 of the Revised Civil Code, each in relation to the other and all in the light of the changes and amendments made by the Legislature in 1902 and thereafter, as well as the clear intention and purpose thereof, a Spanish tutor of the Spanish minors, all residing in Spain, the tutor having been appointed by the family council pursuant to the Spanish Civil Code, or the agent or attorney in fact named for the purpose by the said tutor, must obtain previously the authorization of the insular district court of the district where the property is situated in order to execute a cancelation of a mortgage on real property situated in Porto Rico."

And in *Bracons* v. *Registrar of San Juan,* 24 P. R. R. 703, referring in particular to acquisition by inheritance, this court said:

"Under the principle established by the Revised Civil Code in force in Porto Rico, the rights of the heirs of a Spanish subject, a Catalán, to real property situated in this Island are governed by the laws of Porto Rico and not by those of Cataluña."

In the case of *Williams* v. *Kimball,* reported in 26 L. R. A. 747, the Supreme Court of Florida expressed itself as follows:

"The effect of this contention would be that the capacity of a person to inherit real estate in this state would depend, not upon our laws, but upon the varying statutes of perhaps a hundred or more different states or countries in which the claimants of the estate might reside. In such a state of the law, one a resident citizen of the state would be excluded as an heir, but would be entitled to share in the estate if he accidentally lived over the border line of an adjoining state. This contention of the appellant cannot be sustained. By the common law, which is law with us, all questions of the distribution and descent of real estate must be determined by the law of the jurisdiction in which the property is situated. Speaking upon this subject, Story on Conflict of Laws (sec. 483) says: ' * * * The descent and heirship of real estate are exclusively governed by the law of the country within which it is actually situate. No person can take, except those who are recognized as legitimate heirs by the laws of that country; and they take in the proportions and the order which those laws prescribe. This is the indisputable doctrine of the common law.' Such is even the more prevalent view among the law-writers of those countries where the common law does not prevail. 'Foreign jurists generally, although not universally, maintain the same doctrine, and accordingly hold that in cases of succession *ab intestato* we are to ascertain the persons who are to take the inheritance by the *lex loci rei sitae,* whether the question respects legitimacy, or primogeniture, or right of representation, or proximity of blood, or next of kin.' Id. sec. 484 a. Among a great mass of authorities which sustain the propositions quoted from Story are, Boyce v. St Louis, 29 Barb. 650; Dawes v. Boylston, 9 Mass. 337, 6 Am. Dec. 72; Bryan v. Moore, 11 Mart. (La.) 26, 13 Am. Dec. 347, and authorities cited in note; 3 Am. & Eng. Encyclop. Law, p. 566; Abston v. Abston, 15 La. Ann. 137; Potter v. Titcomb, 22

Me. 300; Elliott v. Minto, 6 Madd. Ch. 16; Chapman v. Robertson, 6 Paige, 627, 3 L. ed. 1128, 31 Am. Dec. 264."

If the inheritance of real property situated in Porto Rico is governed exclusively by the laws of this Island, it seems natural to resort to the courts of this country for determining hereditary rights.

In this particular case there would be no conflict. The Portorican court would undoubtedly render the same judgment that the Spanish court rendered, because the law in force in Spain is the same as that in force in Porto Rico; but that is not the consideration by which we should be guided. If the laws were different, would the registrar, an administrative official, be called upon to adjust the conflict?

In the Spanish precedents we find that according to a decision of the General Directorate of Registries of February 8, 1866, a declaration of heirship made in France was not given validity in Spain, and in general that article 956 of the Law of Civil Procedure prescribes that for recording a foreign judgment in the registries it is necessary to present not only a certified copy thereof, but also a certified copy of the order of the Supreme Court of the nation for its execution. 1 Galindo, *Legislación Hipotecaria*, 507, and 4 Manresa, Law of Civil Procedure, 235.

Our Code of Civil Procedure contains no provision on the matter. The appellant cites section 66 of the Law of Evidence. The said section forms part of the chapter on documents and in order to determine its scope it is well to compare it with sections 59, 60 and 64 of the same law.

Even if the declaration of heirship should be recognized as a true judgment of a foreign court with jurisdiction of the subject matter and the parties, still it would have to be submitted in some manner to a Portorican court in order to make it valid in Porto Rico.

The following is from Ruling Case Law, summing up the jurisprudence as to the general effect of foreign judgments:

"While it is generally conceded by the courts of this country that a foreign judgment is conclusive where it comes incidentally in question, or the defendant relies upon it under the plea of res judicata, the decisions are in conflict as to the effect of such judgment where its validity is directly involved, as where a domestic court is asked to carry it into effect by a direct suit upon the judgment. The majority of the reported American decisions and especially the earlier ones are in accordance with the view formerly entertained by the English courts, and hold that under such circumstances conclusive effect will not be given to the foreign judgment, but it will be considered only prima facie evidence of the rights and matters which it purports to decide, and the merits of the controversy may be inquired into. There is, however, authority to the contrary, even among the earlier decisions in this country, and the tendency of the later cases seems to be to follow the modern English doctrine, and to hold that a foreign judgment upon a matter within the jurisdiction of the court, and in which the court had jurisdiction of the parties, so that they were personally bound by the judgment, in the country where rendered, is conclusive in this country on the matters therein adjudicated, where there has been a trial upon the merits, and there has been no fraud or want of jurisdiction shown. According to the rule laid down by the United States supreme court, if a foreign judgment appears to have been rendered by a competent court having jurisdiction of the cause and of the parties, and upon due allegations and proofs and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal record, the judgment is prima facie evidence, at least of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that by the principles of international law and by the comity of our own country it should not be given full credit and effect." 15 R. C. L. 919–20.

In an attempt to find some specific provision on the matter we have examined the Treaty of Friendship and

General Relations between the United States and Spain of July 3, 1902, published in part 2 of vol. 33 of the United States Statutes at Large. It contains the following provisions which have some bearing on the case, but do not settle definitely the particular question under consideration:

"Article III.—Where, on the death of any person holding real property (or property not personal), within the territories of one of the Contracting Parties, such real property would, by the laws of the land, pass to a citizen or subject of the other, were he not disqualified by the laws of the country where such real property is situated, such citizen or subject shall be allowed a term of three years in which to sell the same, this term to be reasonably prolonged if circumstances render it necessary, and to withdraw the proceeds thereof, without restraint or interference, and exempt from any succession, probate or administrative duties or charges other than those which may be imposed in like cases upon the citizens or subjects of the country from which such proceeds may be drawn.

"The citizens or subjects of each of the Contracting Parties shall have full power to dispose of their personal property within the territories of the other, by testament, donation, or otherwise; and their heirs, legatees, and donees, being citizens or subjects of the other Contracting Party, whether resident or nonresident, shall succeed to their said personal property, and may take possession thereof either by themselves or by others acting for them, and dispose of the same at their pleasure, paying such duties only as the citizens or subjects of the country where the property lies, shall be liable to pay in like cases.

"In the event that the United States should grant to the citizens or subjects of a third Power the right to possess and preserve real estate in all the States, territories and dominions of the Union, Spanish subjects shall enjoy the same rights; and, in that case only, reciprocally, the citizens of the United States shall also enjoy the same rights in Spanish Dominions."

"Article VI.—The citizens or subjects of each of the two High Contracting Parties shall have free access to the Courts of the other, on conforming to the laws regulating the matter, as well for the prosecution as for the defense of their rights, in all the degrees of jurisdiction established by law. * * * "

"Article XXVII.—The Consuls-General, Consuls, Vice-Consuls

or Consular Agents of the respective High Contracting Parties shall have, under the laws of their country and the instructions and regulations of their own Government so far as compatible with local laws, the right of representing the absent, unknown or minor heirs, next of kin or legal representatives of the citizens or subjects of their country, who shall die within their consular jurisdiction; as well as those of their countrymen dying at sea whose property is brought within their consular district; and of appearing either personally or by delegate in their behalf in all proceedings relating to the settlement of their estate until such heirs or legal representatives shall themselves appear.''

Nor does the Treaty of Paris settle the question definitely. It seems to be understood that only the courts of the Island are called upon to say the last word in regard to acquisition by inheritance of real property situated in Porto Rico.

''The title to its land is the very subject which every sovereignty maintains the exclusive right to control by its own laws. 'A sovereignty can not safely permit the title to its land to be determined by a foreign power. Each State has its fundamental policy as to the tenure of land; a policy wrought up in its history, familiar to its population, incorporated with its institutions, suitable to its soil.' (Wharton, Conflict of Laws, p. 636, sec. 278.).'' Note in 18 C. J. 809.

This does not mean, of course, that when a foreign subject dies in his own country and there his heirs obtain a declaration of their rights in accordance with the laws there in force, such document is without value in Porto Rico. What it does mean is that if the heirs need to establish their rights as such in connection with real property situated in Porto Rico, they must resort to the courts of Porto Rico to determine them in accordance with the law in force in Porto Rico. The courts of the Island will give to documents presented to them whatever value they may have, and before them the whole proceeding or such supplementary proceeding as the

circumstances of each particular case may demand will be followed.

The case of *Hecht* v. *Hecht,* 12 P. R. R. 219, cited by the appellant, is an illustration of the action to be adopted. See the care with which the district court and this Suprme Court limited the scope of their decisions to the properties situated in Porto Rico, the Supreme Court expressly explaining "that the orders made, or which may be made, in the judicial proceedings prosecuted in the Canton of Geneva with reference to the personal or real property of Felipe Hecht therein situated cannot be affected by said judgment (that of the district court being affirmed) without prejudice to the right of the parties interested to contest them in a court of competent jurisdiction."

The case of *Rojas, Randall & Co., Inc.,* v. *Registrar,* 27 P. R. R. 20, cited also by the appellant, is not opposed to the principles established in this opinion.

The decision appealed from must be

*Affirmed.*

Justices Aldrey, Hutchison and Franco Soto concurred.
Mr. Justice Wolf concurred in the judgment.