GODET, RECURRENTE, *v.* EL REGISTRADOR DE SAN JUAN, RECURRIDO.

RECURSO gubernativo contra nota del Registrador de la Propiedad de San Juan, Sección Primera, denegando la inscripción de una declaratoria de heredero.

No. 539.—Resuelto en abril 12, 1923.

ESTATUTO REAL—DECLARATORIA DE HEREDEROS—SÚBDITO EXTRANJERO CON BIENES INMUEBLES SITUADOS EN PUERTO RICO—DERECHO INTERNACIONAL PRIVADO.—La declaratoria de herederos de un súbdito extranjero dueño de bienes inmuebles situados en Puerto Rico, en lo que a dichos bienes se refiere, corresponde hacerla a los tribunales de la isla que tengan competencia para ello.

Los hechos están expresados en la opinión.

Abogado del recurrente: *Sr. M. M. Ginorio.*

El registrador recurrido compareció por escrito.

EL JUEZ PRESIDENTE SR. DEL TORO, emitió la opinión del tribunal.

En el Registro de la Propiedad de San Juan se presentó una copia certificada del auto firme dictado por el juzgado de primera instancia del distrito de la Inclusa de Madrid, España, declarando único y universal heredero abintestato de doña Manuela Hilaria Godet y Ladrón de Guevara, fallecida en Madrid, España, el 21 de abril de 1920, en estado de soltería, a su hermano Miguel Godet y Ladrón de Guevara. La certificación está debidamente legalizada y se presentó en el registro a los efectos de inscribir a nombre del heredero la casa número 13 de la calle San José, de esta ciudad de San Juan de Puerto Rico, que consta inscrita a favor de su causante. El registrador se negó a ello por medio de la siguiente nota:

"Denegada la inscripción del precedente documento con vista de otros, porque tratándose de una herencia en la que se comprenden bienes inmuebles radicados en Puerto Rico, carece de competencia para dictar el auto de declaratoria de herederos el Juzgado de Primera Instancia de Madrid, conforme a lo prescrito por los artículos 10, 11 del Código Civil, párrafo 4º. del artículo 2º. de la

Ley Hipotecaria, artículo 5 de la misma, 52 de su Reglamento, resolución de la Dirección de los Registros de 8 de febrero de 1866, y con arreglo a lo resuelto por el Hon. Tribunal Supremo de Puerto Rico en el tomo 22, pág. 369, tomo 24, pág. 753, debiendo en su consecuencia tal declaratoria ser dictada por un tribunal insular, como lo ordena la sección 19 de la Ley sobre Procedimientos Legales Especiales, debiendo regirse esta herencia y la declaración de la misma por las disposiciones relativas al Estatuto real; y se ha tomado en su lugar anotación preventiva por el término legal al folio 171 del tomo 25 de San Juan, finca número 1051, anotación letra A.''

No conforme la parte interesada, interpuso el presente recurso gubernativo. En su alegato sostiene que si bien la cuantía del derecho sucesorio debe regularse por la ley de Puerto Rico, el documento en que dicho derecho se declara habiendo sido otorgado en España debe regirse por la ley española. Cita en apoyo de su contención el artículo 66 de la Ley de Evidencia y los casos de *Hecht* v. *Hecht,* 12 D. P. R. 227 y *Rojas Randall & Co., Inc.,* v. *Registrador,* 27 D. P. R. 21. El recurrente equipara la declaratoria de herederos a un testamento que hubiera otorgado un súbdito español en España y se hubiera presentado en uno de los registros de la propiedad de Puerto Rico para los mismos fines que se presentó la declaratoria, y también parece que considera la declaratoria similar a una escritura otorgada en el extranjero en la cual se hiciera constar un contrato de compraventa de bienes inmuebles situados en Puerto Rico.

No es enteramente así como surge la cuestión de la nota del registrador. Este sostiene que tratándose de una herencia en la que se comprenden bienes inmuebles radicados en Puerto Rico, carece de jurisdicción para dictar el auto de declaratoria de herederos, en cuanto a dichos bienes por supuesto, el Juzgado de Madrid, correspondiendo dicha jurisdicción a la corte de distrito de Puerto Rico competente.

Con respecto a cuál es la ley que regula la trasmisión de bienes inmuebles en esta Isla, no hay duda alguna. En el caso de *Colón* v. *El Registrador de Aguadilla,* 22 D. P. R.

369, se hizo un examen detenido de las disposiciones del Código Civil sobre la materia tales como fueron revisadas por la Asamblea Legislativa de Puerto Rico, y se decidió finalmente que:

"Interpretando los artículos 9, 10, 11, 282 y 284 del Código Civil vigente, en relación unos con otros, y todos a la luz de los cambios y enmiendas introducidas por la Legislatura en 1902 y Legislaturas subsiguientes, así como de la intención manifiesta y objeto de los mismos, el tutor español de menores españoles residentes todos en España autorizado por el Consejo de Familia, conforme lo exige el Código Civil Español, o el apoderado o mandatario designado al efecto por dicho tutor, necesitan la autorización previa de la corte de distrito del lugar en donde radiquen los bienes para proceder a la cancelación de una hipoteca sobre bienes inmuebles radicados en Puerto Rico."

Y en el de *Bracons* v. *El Registrador de San Juan,* 24 D. P. R. 753, refiriéndose concretamente a transmisiones por herencia, dijo este tribunal que:

"Con arreglo al principio que informa el Código Civil revisado vigente en Puerto Rico, la sucesión de un súbdito español, catalán, con respecto a bienes inmuebles situados en esta isla, debe regirse por la ley portorriqueña y no por la legislación catalana."

En el caso de *Williams* v. *Kimball,* reportado en 26 L. R. A. 747, la Corte Suprema de Florida se expresó así:

"Esta proposición tendría el efecto de hacer depender la capacidad de una persona para heredar bienes raíces situados en este Estado, no de nuestras leyes sino de los estatutos varios de quizás cien o más Estados o países en que pudieran residir los diferentes interesados en una herencia. Bajo una situación tal de derecho un ciudadano del Estado con residencia en él pudiera quedar fuera del concepto de heredero y sin embargo tener derecho a participar de la herencia caso de vivir accidentalmente en un punto de la frontera de un Estado vecino. Esta contención del apelante es insostenible. Dentro del derecho común, que para nosotros es ley, todas las cuestiones sobre partición y trasmisión hereditaria de bienes raíces deben determinarse de acuerdo con la ley de la jurisdicción en que están situados los bienes. Hablando sobre la materia dice Story

en su obra 'Conflict of Laws' (sec. 483) : ' * * * La herencia de bienes raíces se rige exclusivamente por la legislación del país en que los mismos están realmente situados. Ninguna persona puede heredar, excepto aquellas que están reconocidas como herederos legítimos por las leyes del país; y ésas heredarán en el orden y proporción que dichas leyes prescriban. Esta es la doctrina indiscutible dentro del derecho común.' Tal es el criterio que prevalece entre los tratadistas de derecho aún en aquellos países donde no rige el derecho común. 'General aunque no universalmente, los juristas extranjeros sostienen la misma doctrina; y de conformidad con ella declaran que en los casos de sucesión intestada la determinación de quiénes son las personas con derecho a la herencia debe regularse por la ley del lugar donde la cosa está situada, ya verse la cuestión sobre legitimidad, primogenitura, derecho de representación, consanguinidad o afinidad.' *Id.,* sec. 484 *a.* Entre un gran número de autoridades que sostienen las proposiciones de Story arriba citadas están Boyce v. St. Loúis, 29 Barb. 650; Dawes v. Boylston, 9 Mass. 337, 6 Am. Dec. 72; Bryan v. Moore, 11 Mart. (La.) 26, 13 Am. Dec. 347, y autoridades citadas en la nota correspondiente; 3 Am. & Eng. Encyclop. Law, p. 566; Abston v. Abston, 15 La. Ann. 137; Potter v. Titcomb, 22 Me. 300; Elliott v. Minto, 6 Madd. Ch. 16; Chapman v. Robertson, 6 Paige 627, 3 L. ed. 1128, 31 Am. Dec. 264.''

Si la herencia de bienes raíces situados en Puerto Rico se rige, pues, exclusivamente por las leyes de esta Isla, parece natural que se acuda a los tribunales del país para fijar el derecho hereditario.

En este caso concreto no habría conflicto. El tribunal puertorriqueño dictaría seguramente la misma sentencia que dictó el tribunal español, porque la ley vigente en España es igual a la que está en vigor en Puerto Rico, pero no es esa la consideración que debe guiarnos. Podría ser distinta la ley y en tal caso ¿correspondería al registrador, un funcionario administrativo, decidir el conflicto?

Si examinamos los precedentes españoles encontraremos que según la Resolución de la Dirección General de Registros de 8 de febrero de 1866, no se reconoció validez en España a una declaratoria de herederos hecha en Francia, y

en general que la misma Ley de Enjuiciamiento Civil—artículo 956—prescribe que para inscribir las sentencias extranjeras en los registros es necesario además del testimonio de las mismas, el certificado de la providencia del Tribunal Supremo de la nación en que se declare que debe dárseles cumplimiento. Véase 1 Galindo, Legislación Hipotecaria, 507, y 4 Manresa, Ley de Enjuiciamiento Civil, 235.

·Nuestro Código de Enjuiciamiento Civil no contiene precepto alguno sobre la materia. La parte recurrente cita el art. 56 de la Ley de Evidencia. Dicho artículo forma parte del capítulo que trata de los documentos y para fijar su alcance es conveniente compararlo con los artículos 59, 60 y y 64 de la propia ley de Evidencia.

Aun cuando se reconociera a la declaratoria de herederos el carácter de una verdadera sentencia dictada por un tribunal extranjero con jurisdicción sobre la materia y las partes, siempre tendría que someterse de algún modo a un tribunal puertorriqueño para que fuera eficaz en Puerto Rico.

Véase lo que dice Ruling Case Law, resumiendo la jurisprudencia, sobre el efecto en general de sentencias extranjeras. Es como sigue:

. "Aunque ha sido generalmente admitido por las cortes de este país que una sentencia extranjera es concluyente en aquellos asuntos con que incidentalmente viene a tener relación, o cuando el demandado la invoca para hacer una alegación de cosa juzgada, las decisiones están en conflicto en cuanto al efecto de una sentencia tal cuando se trata directamente de su validez, como por ejemplo cuando una corte del país es llamada a ponerla en vigor mediante un pleito basado directamente en dicha sentencia. La mayoría de las decisiones americanas publicadas, y especialmente las más antiguas, están de acuerdo con el criterio que de viejo sustentaban las cortes inglesas, y sostienen que bajo tales circunstancias no se dará efecto concluyente a la sentencia extranjera, sino que será considerada sólo como prueba *prima facie* de los derechos y asuntos que en ella, por su faz, se deciden, pudiendo investigarse los méritos de la controversia. Hay, sin embargo, autoridades que declaran lo contrario, aún entre las más antiguas decisiones del país, y la tendencia

de las decisiones modernas parece ser seguir la doctrina inglesa que hoy prevalece, y sostienen que una sentencia extranjera sobre una materia que está dentro de la jurisdicción de la corte, teniendo la corte jurisdicción sobre las partes, de manera que éstas estaban personalmente obligadas por la sentencia, en el país en que fué dictada, es concluyente en este país en cuanto al asunto en ella decidido, cuando ha habido un juicio sobre los méritos y no se ha demostrado fraude alguno o falta de jurisdicción.  De acuerdo con la regla establecida por la Corte Suprema de los Estados Unidos, si una corte competente con jurisdicción sobre la materia y sobre las partes, y mediante las debidas alegaciones y pruebas y una oportunidad para presentar defensas contra las mismas, y los procedimientos están en consonancia con el enjuiciamiento de una jurisprudencia civilizada, y están contenidos en un record claro y debidamente formalizado, la sentencia es prueba *prima facie,* cuando menos, de la verdad de lo en ella decidido; y debe considerársele como concluyente sobre los méritos del asunto juzgado en el tribunal extranjero, a menos que se demuestre algún motivo especial para impugnarla, como, por ejemplo, demostrando que está viciada por fraude o prejuicio, o que debido a los principios del derecho internacional y a la cortesía de este país no debe dársele entero crédito y valor.''   15 R. C. L.   919–20.

Con objeto de ver si encontrábamos alguna disposición específica sobre la materia, hemos examinado el Tratado de Amistad y Relaciones Generales entre los Estados Unidos de América y España de 3 de julio de 1902 que aparece en el vol. 33, segunda parte de los Estatutos *at large* de los Estados Unidos.  A él pertenecen las siguientes disposiciones que guardan relación con el caso pero que nada concreto resuelven sobre la cuestión especial que se examina:

''Artículo III.—Cuando por fallecimiento del que posea por cualquier concepto bienes inmuebles en el territorio de una de las Partes Contratantes dichos bienes debieren pasar, según las leyes del país donde radican, a manos de un ciudadano o súbdito de la otra, y éste por la legislación del país donde se hallan situados dichos bienes inmuebles estuviese incapacitado para ello, se concederá al mencionado ciudadano o súbdito un plazo de tres años para venderlos, prolongándose este plazo prudencialmente, si las circunstancias lo hiciesen necesario, y asimismo para retirar los productos de

ellos, sin restricción ni intervención y exentos de todo derecho o carga de sucesión, de testamentaria o administrativos, que no fuesen aquellos que se impongan o impusieren en casos similares a los ciudadanos o súbditos del país del que se sacaren dichos productos.

"Los ciudadanos o súbditos de cada una de las partes Contratantes tendrán plenas facultades para disponer de sus bienes muebles en los territorios de la otra, por testamento, donación o de otra suerte; y sus herederos, legatarios y donatarios, que sean ciudadanos o súbditos de la otra Parte Contratante, bien residan o no en dichos territorios, sucederán ' en los expresados bienes muebles, y podrán tomar posesión de los mismos, sea directamente o por representación, y disponer de ellos a su voluntad, abonando únicamente aquellos derechos que están obligados a abonar los ciudadanos o súbditos de la Nación donde se hallen los bienes referidos, en casos semejantes.

"En el evento de que los Estados Unidos concediesen a los ciudadanos o súbditos de una tercera Potencia el derecho de poseer y conservar bienes inmuebles en todos los Estados, territorios y dominios de la Unión, los súbditos españoles disfrutarán de igual derecho; y sólo en ese caso, recíprocamente, los ciudadanos de los tados Unidos lo disfrutarán también en los dominios de España."

"Artículo VI.—Los ciudadanos o súbditos de cada una de las Altas Partes Contratantes tendrán libre acceso a los Tribunales de la otra, de conformidad con las leyes que rijan la materia, así para la persecución como para la defensa de sus derechos en todos los grados de la jurisdicción establecida por la ley."   *   *   *

Artículo XXVII.—Los Cónsules Generales, Cónsules, Vice-Cónsules y Agentes Consulares de las respectivas Altas Partes Contratantes, tendrán, conforme a las leyes de su país y a las instrucciones y reglamentos de su propio Gobierno, en cuanto sean compatibles con las leyes locales, el derecho de representar a los herederos ausentes, desconocidos o menores de edad, parientes inmediatos o representantes legales de los ciudadanos o súbditos de su país, que mueran dentro de su jurisdicción consular; así como de aquellos de sus compatriotas que mueran en el mar, cuyos bienes sean llevados a su demarcación consular; y de comparecer personalmente, o por medio de delegado que los represente en todos los procedimientos relativos al arreglo de sus bienes, hasta que los herederos o representantes legales comparezcan por sí mismos."   *   *   *

Tampoco el Tratado de París resuelve en concreto la

cuestión. Y es que parece sobreentendido que sólo los tribu-
nales de la Isla son los llamados a decir la última palabra
en cuanto a la trasmisión por herencia de los bienes inmue-
bles en ella situados.

"El título sobre sus tierras es precisamente la materia que cada
soberanía conserva el derecho exclusivo de regular por sus propias
leyes. 'Una soberanía no puede con seguridad permitir que el título
sobre sus tierras se determine por una autoridad extraña. Cada
Estado tiene su política fundamental en cuanto a la posesión de
tierras; una política que está escrita en su historia, le es familiar a
su pueblo, está incorporada a sus instituciones y se adapta a su
suelo.' (*Wharton, Conflict of Laws,* p. 636, sec. 272)" 18 C. J.
809, nota.

Esto no quiere decir, desde luego, que cuando un súbdito
extranjero muera en su país y allí sus herederos obtengan
de acuerdo con las leyes allí vigentes, la declaración de su
derecho, tal documento carezca de valor en Puerto Rico. Lo
que sí quiere decir es que si los herederos necesitan fijar sus
derechos como tales en relación con bienes inmuebles situa-
dos en Puerto Rico tienen que acudir a los tribunales de
Puerto Rico para determinarlos de acuerdo con la ley
vigente en Puerto Rico. Los tribunales de la Isla recono-
cerán a los documentos que se les presenten el valor que
tengan y ante ellos se seguirá el procedimiento total o com-
plementario que requieran las circunstancias que concurran
en cada caso particular.

La misma decisión de *Hecht* v. *Hecht,* 12 D. P. R. 227, ci-
tada por el recurrente, es ilustrativa de la conducta que debe
seguirse. Véase con qué cuidado la corte de distrito y este
Tribunal Supremo limitaron el alcance de su resolución a los
bienes situados en Puerto Rico, expresamente aclarando el
Supremo "que las resoluciones dictadas o que se dicten en
procedimientos judiciales seguidos en el Cantón de Ginebra
sobre bienes muebles o inmuebles de don Felipe Hecht allí
existentes, no pueden ser afectados por dicha sentencia (la

de la corte de distrito que se 'confirma), sin perjuicio del derecho que asista a las partes interesadas para impugnarlas ante jurisdicción competente.''

El caso de *Rojas, Randall & Co.,* v. *Registrador,* 27 D. P. R. 21, también citado por la parte recurrente, no se opone a los principios establecidos en esta opinión.

Debe confirmarse la nota recurrida.

*Confirmada la nota recurrida.*

Jueces concurrentes: Sres. Asociados Aldrey, Hutchison y Franco Soto.

El Juez Asociado Sr. Wolf firmó ''Conforme con la sentencia.''